**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 11/29/96**

**TENTH CIRCUIT**

_____

ARLENE M. BROWN, M.D.; FAMILY
PRACTICE ASSOCIATES, P.C.,

    Plaintiffs-Appellees,

v.                                                                      No. 95-2293

PRESBYTERIAN HEALTHCARE SERVICES;
VALERIE MILLER; VICKIE WILLIAMS, D.O.,

    Defendants-Appellants,

and

SIERRA BLANCA MEDICAL ASSOCIATES,
P.A.; GARY JACKSON, D.O.,

    Defendants.

------------------------------------
ARLENE M. BROWN, M.D., FAMILY
PRACTICE ASSOCIATES, P.C.,

    Plaintiffs-Appellants,                              No. 96-2013

v.

PRESBYTERIAN HEALTHCARE SERVICES,
VALERIE MILLER, SIERRA BLANCA
MEDICAL ASSOCIATES, P.A., VICKIE
WILLIAMS, D.O., GARY JACKSON, D.O.,

    Defendants-Appellees.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**

Thomas C. Bird (David W. Peterson of Keleher & McLeod, P.A.; and Phil Krehbiel of Krehbiel, Bannerman, Horn & Hisey, P.A., Albuquerque, New Mexico, with him on the briefs) of Keleher & McLeod, P.A., Albuquerque, New Mexico, for Plaintiffs-Appellees.

Bruce Hall (Edward Ricco and Theresa W. Parrish with him on the briefs) of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendants-Appellants.

_____

Before **BRORBY, RONEY**,* and **LOGAN**, Circuit Judges.

_____

**BRORBY**, Circuit Judge.

_____

Dr. Arlene Brown, a family physician, and her professional association, Family Practice Associates, P.C. (hereinafter collectively referred to as "Dr. Brown"), brought suit against Presbyterian Healthcare Services, Valerie Miller, Vickie Williams, D.O., Sierra Blanca Medical Associates, P.A., and Gary Jackson, D.O., seeking injunctive relief and damages for violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1994), unreasonable restraint of trade and unfair trade practices in violation of Section 57 of the New Mexico Annotated Statutes, bad faith breach of contract, intentional interference with

---

* The Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

contract, defamation, and *prima facie* tort. Dr. Brown's causes of action arose from the revocation of her obstetrical hospital staff privileges by Lincoln County Medical Center,[1] and from the hospital's subsequent report of this revocation to the National Practitioner Data Bank under the category of "Incompetence/ Malpractice/Negligence." According to Dr. Brown, the defendants' "anticompetitive motives" were at the heart of these actions.

After a three week jury trial, the jury rendered a verdict in favor of Dr. Brown on the defamation claim, tortious interference with contract claim, and certain of her antitrust claims. Thereafter, the district court set aside the jury's awards of damages on the tortious interference with contract claim, and the jury's award of punitive damages against Dr. Williams on the antitrust claims. Dr. Brown and Defendants Presbyterian Healthcare Services, Ms. Miller and Dr. Williams appeal from the district court's order and amended judgment.

---

[1] Defendant Presbyterian Healthcare Services, a nonprofit New Mexico corporation, manages and operates Lincoln County Medical Center under an agreement with Lincoln County, New Mexico.

## I.  Factual Background

Dr. Arlene Brown, a Board-certified family physician, began practicing family medicine in Ruidoso, New Mexico, in 1983. Dr. Brown joined the medical staff of Lincoln County Medical Center, and in 1992 she held clinical privileges at the hospital in obstetrics and other areas. Dr. Vickie Williams, a physician specializing in obstetrics and gynecology in Ruidoso, is an economic competitor of Dr. Brown.

In early 1992, Dr. Williams participated in an informal peer review of three patients treated by Dr. Brown. Dr. Williams expressed concerns about the quality of care reflected in the patients' charts and prepared typewritten comments on the charts. Valerie Miller, Lincoln County Medical Center's Administrator, then referred the charts to specialists outside the hospital for review. The outside reviewing physicians' comments were submitted to Lincoln County Medical Center's Executive Committee. At a meeting of the Executive Committee on July 13, 1992, Dr. Brown agreed to a requirement to consult with an obstetrics specialist in treating high-risk obstetrical patients.

In February 1993, Valerie Miller instituted formal peer review proceedings against Dr. Brown by sending a complaint to the Medical Staff Executive Committee, charging Dr. Brown with failure to abide by the consultation

agreement. The Executive Committee instituted formal peer review proceedings against Dr. Brown by appointing a panel of three physicians to conduct a hearing on the complaint. At the hearing in April 1993, the panel reviewed the charts of two patients treated by Dr. Brown and heard testimony from Dr. Williams and Dr. Brown. The next day, the hearing panel issued its report, concluding Dr. Brown breached her agreement to obtain appropriate consultation and recommending removal of Dr. Brown's obstetrical privileges. Thereafter, the Medical Executive Committee approved the panel's recommendation and Lincoln County Medical Center's Board of Trustees adopted the recommendation.[2]

Following the Board of Trustees' disciplinary action, Lincoln County Medical Center submitted a report to the National Practitioner Data Bank concerning the revocation of Dr. Brown's obstetrical privileges.[3] Glenda Perry,

---

[2] Dr. Brown subsequently appealed the Board of Trustees' decision. However, on May 20, 1993, the Board's Appeal Panel affirmed the Board of Trustees' decision, with one minor modification. The modification allowed Dr. Brown to reapply for privileges after fulfilling certain training requirements.

[3] The National Practitioner Data Bank is an organization created under the Health Care Quality Improvement Act to collect information on physicians, including reports of adverse peer review actions. *See* 45 C.F.R. Part 60 (1995). "Each health care entity must report to the Board of Medical Examiners ... [a]ny professional review action that adversely affects the clinical privileges of a physician." 45 C.F.R. § 60.9(a). The Board of Medical Examiners must in turn report this information to the National Practitioner Data Bank. 45 C.F.R. § 60.9(b).

the hospital's medical staff coordinator, prepared the report in collaboration with Ms. Miller. One blank on the report called for insertion of an "Adverse Action Classification Code." Ms. Perry and Ms. Miller settled on the code entitled "Incompetence/ Malpractice/ Negligence."

When Dr. Brown received a copy of the hospital's data bank report, she submitted a report of her own to the National Practitioner Data Bank stating Lincoln County Medical Center never found her negligent, incompetent or guilty of malpractice. The National Practitioner Data Bank then notified Lincoln County Medical Center of Dr. Brown's objection to the report, and provided the hospital with an opportunity to revise its report. However, the hospital elected not to amend the data bank report.

Although unrelated to the revocation of Dr. Brown's obstetrical privileges, in 1992 a family practice physician named Dr. Mark Reib contacted a Presbyterian Healthcare Services recruiter to discuss family medicine practice opportunities in Ruidoso, New Mexico. When Dr. Reib expressed an interest in joining Dr. Brown's practice, the recruiter informed Dr. Reib the hospital would only offer him a financial recruitment package if he were to go to work for

Lincoln County Medical Center or in direct competition with Dr. Brown.  Dr.

Reib chose not to join Dr. Brown's medical practice.

## II.  Trial and Subsequent Procedural History

In March 1995, the trial of this action commenced before a jury.  Almost

three weeks later, the jury returned a special verdict in Dr. Brown's favor on her

defamation claim, intentional interference with contract claim, and on certain of

her antitrust claims.[4]  The district court entered judgment in accordance with the

jury's findings, trebling, as required by law,[5] the antitrust damages against Ms.

Miller and Dr. Williams.  Thereafter, pursuant to Fed. R. Civ. P. 50(b) and 59(c),

the defendants filed a motion for judgment as a matter of law or to alter or amend

the judgment or for a new trial.  In a comprehensive and detailed "Memorandum

Opinion and Order," the district court set aside the jury's award of compensatory

---

[4]  Specifically, the jury entered the following awards of damages:  (1) $112,000.00 against Ms. Miller and Dr. Williams on the antitrust claims; (2) $30,000.00 against Ms. Miller on the defamation claim; (3) $7,500.00 in compensatory damages and $75,000.00 in punitive damages against Presbyterian Healthcare Services on the intentional interference with contract claim; (4) $75,000.00 in punitive damages against Ms. Miller on the antitrust and defamation claims; and (5) $75,000.00 in punitive damages against Dr. Williams on the antitrust claims.  The jury found in favor of defendants Dr. Jackson and Sierra Blanca Medical Associates with respect to all claims against them.

[5]  *See* 15 U.S.C. § 15(a) (1994).

and punitive damages against Presbyterian Healthcare Services on the intentional interference with contract claim, and the jury's award of punitive damages against Dr. Williams on the antitrust claim.[6] The district court rejected all of the defendants' remaining arguments and entered an amended judgment in conformity with its opinion.

Dr. Brown appeals the district court's amended judgment, raising two issues: (1) whether the district court erred in vacating the compensatory and punitive damages awards for tortious interference with contract and (2) whether the district court erred in vacating the punitive damages award against Dr. Williams. The appeal of Presbyterian Healthcare Services, Ms. Miller and Dr. Williams raises four issues: (1) whether the district court erred in determining the defendants were not immune as a matter of law from damages resulting from the revocation of Dr. Brown's obstetrical privileges; (2) whether the district court erred in determining the defendants were not immune as a matter of law from damages resulting from the data bank report; (3) whether the district court erred in denying the defendants' motion for judgment as a matter of law on the merits of Dr. Brown's antitrust claims; and (4) whether the district court erred in denying

---

[6] The court set aside the former pursuant to Fed. R. Civ. P. 50(b), and the latter pursuant to Fed. R. Civ. P. 59(e).

the defendants' motion for judgment as a matter of law on the merits of Dr. Brown's defamation claim. After thoroughly reviewing the parties' briefs, the district court's Memorandum Opinion and Order, and all relevant statutes and case law, we conclude the district court erred in setting aside the jury's awards of damages on Dr. Brown's intentional interference with contract claim. However, with respect to the remaining issues raised by the parties on appeal, we find the district court's rulings were proper and in accordance with law.

### III. Dr. Brown's Appeal

Dr. Brown first contends the district court erred in vacating as a matter of law the jury's award of compensatory and punitive damages against Presbyterian Healthcare Services on the tortious interference with contract claim. The Court reviews the district court's order granting judgment as a matter of law de novo, applying the same standard as the district court. *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 941 (10th Cir. 1994). The legal standard for granting judgment as a matter of law is identical to the standard for granting summary judgment under Fed. R. Civ. P. 56. *Pendleton v. Conoco, Inc.,* 23 F.3d 281, 286 (10th Cir. 1994). When applying this standard, a court is to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion for summary judgment or judgment as a matter of law. *Wolf*

*v. Prudential Ins. Co.,* 50 F.3d 793, 796 (10th Cir. 1995) (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). Judgment as a matter of law should be affirmed only if the evidence is insufficient to permit a jury to properly return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1985).

In the present case, the jury found Presbyterian Healthcare Services liable for tortious interference with contract and awarded Dr. Brown $7,500.00 in compensatory damages and $75,000.00 in punitive damages on this claim. In its Memorandum Opinion and Order, however, the district court vacated the award of compensatory damages, concluding Dr. Brown had failed to present adequate proof of actual damages on this claim. Since the punitive damages award for tortious interference "was connected only to the jury's finding that [Presbyterian Healthcare Services] intentionally interfered with plaintiffs' contractual relations," the district court also set aside the $75,000.00 punitive damages award.

Dr. Brown claims the district court erred in vacating the awards of damages for tortious interference with contract because the record contains sufficient evidence to support the jury's awards. Presbyterian Healthcare Services, on the other hand, contends Dr. Brown did not establish damages for tortious

interference with "reasonable certainty" and therefore, the district court properly set aside the jury's awards of damages on this claim. As noted by the district court, damages that are based on conjecture, speculation, or guesswork are not recoverable. *Smith v. Babcock Poultry Farms, Inc.,* 469 F.2d 456, 459 (10th Cir. 1972) (citing *United States v. Griffith, Gornall & Carman, Inc.,* 210 F.2d 11 (10th Cir. 1954)). However, the fact damages are difficult to ascertain will not necessarily bar recovery. *Id.* Under New Mexico law, which is applicable in the present case, "[t]he lack of certainty that will prevent a recovery is uncertainty as to the fact of damages, not as to the amount." *Camino Real Mobile Home Park Partnership v. Wolfe,* 891 P.2d 1190, 1201 (N.M. 1995). Damages need not be computed with "mathematical certainty" and recovery will not be denied where the evidence "afford[s] a reasonable basis for estimating [plaintiff's] loss." *Archuleta v. Jacquez*, 704 P.2d 1130, 1134 (N.M. Ct. App. 1985). In reviewing a jury's award of damages, the court should sustain the award unless it is clearly erroneous or there is no evidence to support the award. *Hudson v. Smith*, 618 F.2d 642, 646 (10th Cir. 1980).

Here, Dr. Brown's alleged damages for intentional interference with contract stem from Presbyterian Healthcare Services' interference with Dr. Brown's attempts to hire Dr. Mark Reib. In an effort to prove the hospital's

interference with Dr. Reib caused her damages, Dr. Brown presented testimony at trial from Dr. Michael McDonald, an economic expert. Dr. McDonald testified regarding the additional patient receipts Dr. Steven Frey,[7] a family practitioner who joined Dr. Brown's practice in May 1992, brought in to Dr. Brown's practice in 1992 and 1993. According to Dr. McDonald, Dr. Frey's patient receipts averaged around $6,000.00 per month in 1992, and almost $15,000.00 per month in 1993. Dr. McDonald also testified concerning the additional costs Dr. Brown would have incurred in obtaining additional patient revenues. Based on Dr. Brown's 1993 financial statements, Dr. McDonald determined Dr. Brown's costs would increase by 34.1 cents for every dollar of additional receipts. Hence, Dr. McDonald concluded "65.9 percent of any increment in patient receipts will go to the bottom line, the net income of [Dr. Brown's practice]."

Dr. George Rhodes, Jr., an economist for the defense, also testified concerning the additional revenue Dr. Frey brought in to Dr. Brown's practice in

_____

[7] The court notes the credentials and background of Dr. Frey and Dr. Reib are strikingly similar. Dr. Frey completed a family practice residency in 1983, while Dr. Reib completed a family practice residency in 1984. Following completion of their respective residency programs, Dr. Frey and Dr. Reib each spent three to four years in the Navy. Apparently, the two doctors were stationed together on Guam and became friends. Dr. Frey and Dr. Reib each entered a private family medicine practice after their respective stints in the Navy.

1992 and 1993. Dr. Rhodes testified the hiring of Dr. Frey increased the revenue to Dr. Brown's practice by $15,000.00 to $20,000.00 per month in 1993. Additionally, Dr. Rhodes firmly concluded the addition of another physician to Dr. Brown's practice would result in an increase in the practice's revenue.

From the above testimony, it is clear Presbyterian Healthcare Services' interference with the hiring of Dr. Reib caused financial harm to Dr. Brown's practice. Although the testimony of Dr. McDonald and Dr. Rhodes does not provide a precise model for determining the extent of Dr. Brown's damages, it does provide a reasonable basis for estimating the plaintiff's loss. From the testimony regarding the amount of additional revenue Dr. Frey brought into Dr. Brown's practice, the jury could have reasonably determined the hiring of Dr. Reib would have resulted in a similar increase in revenue. Such a determination finds support in New Mexico law *(see, e.g.*, *Ranchers Exploration & Dev. Corp. v. Miles*, 696 P.2d 475, 477 (N.M. 1985) (historic profits of established business may be considered in determining lost profits) (citing *J.R. Watkins Co. v. Eaker*, 244 P.2d 540, 544 (N.M. 1952)), and is particularly sound in light of the similar training and professional backgrounds of Dr. Frey and Dr. Reib, and the temporal proximity of the period in which Dr. Frey began his employment with Dr. Brown to the period in which Presbyterian Healthcare Services interfered with the hiring

-14-

of Dr. Reib.  Finally, from Dr. McDonald's testimony concerning the amount of additional costs Dr. Brown would have incurred from increased patient revenues, the jury could have reached a rational conclusion as to the amount of lost profits Dr. Brown's practice incurred due to Presbyterian Healthcare Services' tortious interference with contract.

As explained in Restatement (Second) of Torts, once an injured person establishes his business or transaction would have been profitable,

> it is not fatal to the recovery of substantial damages that he is unable to prove with definiteness the amount of the profits he would have made or the amount of harm that the defendant has caused.  It is only essential that he present such evidence as might reasonably be expected to be available under the circumstances.

Restatement (Second) of Torts § 912(d), at 483 (1979).  Given the circumstances of this case, we believe the evidence concerning the increase in revenues resulting from the recruitment of Dr. Frey was a reasonable method of establishing damages.  This is especially so in light of the fact that the certainty of damages "was 'made hypothetical by the very wrong' of the defendant."  *See* Restatement (Second) of Torts § 774A comt. c (1979).  We find the jury's award of compensatory damages to be reasonably based upon sufficient evidence in the record, and we therefore reverse the district court's order vacating this award.

Having reversed the district court's order vacating the jury's award of compensatory damages for tortious interference with contract, we must next determine whether its order setting aside the jury's award of punitive damages on this claim should stand. The district court set aside the punitive damages award solely because it was dependent on the jury's award of compensatory damages on the tortious interference claim. Since we have reinstated the compensatory damages award, the punitive damages award likewise must be reinstated. We therefore reverse the district court's order vacating the jury's award of punitive damages on the tortious interference with contract claim.

Dr. Brown also contends the district court erred in setting aside the jury's award of punitive damages against Dr. Williams on the antitrust claim. The district court did so pursuant to Fed. R. Civ. P. 59(e), which ruling we review for abuse of discretion. *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994). Under the abuse of discretion standard,

> a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the "abuse of discretion" standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

-16-

*Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)). In this circuit, abuse of discretion is defined as "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994) (quoting *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991)).

In the present case, the jury found Dr. Williams liable on the antitrust conspiracy claims and awarded punitive damages against her in the amount of $75,000.00. Thereafter, in accordance with 15 U.S.C. § 15(a) (1994),[8] the district court entered an award of treble damages against Dr. Williams on the antitrust claims. However, the district court vacated the jury's award of punitive damages against Dr. Williams, noting such an award would be duplicative because the treble damages provision already embodies punitive damages.

Dr. Brown now contends the district court erroneously set aside the punitive damages award because "[t]he Defendants proposed a verdict form calling for punitive damages for antitrust violations." According to Dr. Brown,

_____

[8] 15 U.S.C. § 15(a) provides in pertinent part, "any person who shall be injured ... by reason of anything forbidden in the antitrust laws ... shall recover threefold the damages by him sustained."

the defendants "invited" the jury to erroneously award punitive damages against Dr. Williams, and consequently, the defendants are now precluded from seeking judicial review of this "invited error." As an initial matter, the court notes it is clearly improper to allow a plaintiff to recover punitive damages along with trebled damages on an antitrust claim. "Punitive damages beyond the statutory trebled damages cannot be awarded for an antitrust violation. The enhancement of damages in an antitrust case is the damages trebled." *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1381 (8th Cir. 1983) (citing *Clark Oil Co. v. Phillips Petroleum Co.*, 148 F.2d 580, 582 (8th Cir.) (treble damage provision encompasses both punitive and compensatory damages), *cert. denied*, 326 U.S. 734 (1945)). *See also Spence v. Southeastern Alaska Pilots' Ass'n*, 789 F. Supp. 1014, 1029 (D. Alaska 1992) ("[p]unitive damages are not available on federal anti-trust claims").

Notwithstanding the patent impropriety of allowing a plaintiff to recover punitive damages on an antitrust claim, Dr. Brown argues Dr. Williams' failure to object to the jury instructions and verdict sheet that permitted the recovery of such damages serves to preclude subsequent judicial review of the jury's award of punitive damages. As Dr. Brown points out, an appellant may not generally complain on appeal of errors he has himself induced or invited. *See, e.g.,*

*Meredith v. Beech Aircraft Corp.,* 18 F.3d 890 (10th Cir. 1994) (citing *Gundy v. United States*, 728 F.2d 484, 488 (10th Cir. 1984)). However, where the jury has returned a special verdict, the trial judge is obligated to apply appropriate legal principles to the facts found by the jury. *Thedorf v. Lipsey*, 237 F.2d 190, 193 (7th Cir. 1956). "[I]t is for the court to decide upon the jury's answers ... what the resulting legal obligation is." *Id.* Moreover, in determining whether to grant or deny a Rule 59(e) motion to alter or amend the judgment, the district court is vested with considerable discretion. *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir. 1993) (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990)). The district court may grant a motion to alter or amend the judgment where it is necessary to correct manifest errors of law. Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* § 2810.1, at 124-25 (1995).

In the case at bar, the jury instructions and special verdict form were exhaustive and labyrinthine. The jury's responsibilities included determining the liability of six defendants for as many as seven distinct claims. The special verdict form alone was twelve pages and contained more than thirty individual questions. Given the numerous parties, claims and overall complexity of the case, we do not believe the trial judge abused his discretion in vacating the jury's award

of punitive damages against Dr. Williams. As stated in the district court's Memorandum Opinion and Order, "it would have been impractical and confusing to the jury to have drafted the special verdict to include all of the combinations of circumstances under which punitive damages could or could not have been awarded against various defendants." The district court's decision to vacate the award of punitive damages served to correct a manifest error of law and did not prejudice Dr. Brown. Under these circumstances, we are *not* left with "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Hence, we affirm the district court's order vacating the award of punitive damages against Dr. Williams.

**IV. Appeal of Presbyterian Healthcare Services, Dr. Williams and Ms. Miller**

Presbyterian Healthcare Services, Dr. Williams and Ms. Miller contend the district court erred in: (1) failing to find the defendants immune, as a matter of law, from antitrust and defamation damages under the Health Care Quality Improvement Act and (2) failing to grant judgment as a matter of law in the defendants' favor on the merits of Dr. Brown's antitrust and defamation claims. As stated, we review the denial of a motion for judgment as a matter of law de

novo, applying the same legal standard used by the district court. *Thompson*, 34 F.3d at 941. Judgment as a matter of law should only be granted if the evidence, when viewed in the light most favorable to the party opposing the motion, could not support a verdict in that party's favor. *Anderson*, 477 U.S. at 257.

First, the defendants argue the trial court erred in failing to find them immune, as a matter of law, from damages resulting from the revocation of Dr. Brown's obstetrical privileges, under the Health Care Quality Improvement Act. In 1986, Congress adopted the Health Care Quality Improvement Act in response to "[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care." *See* 42 U.S.C. § 11101(1), (2) (1994). Recognizing "[t]he threat of private money damage liability ... unreasonably discourages physicians from participating in effective professional peer review," *see* 42 U.S.C. § 11101(4), Congress deemed it essential for the legislation to provide qualified immunity from damages actions for hospitals, doctors and others who participate in professional peer review proceedings. *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1028 (4th Cir. 1994). Thus, under the Health Care Quality Improvement Act, a peer review participant is immune from private damage claims stemming from the peer review action provided the review action is taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. §§ 11111(a)(1), 11112(a) (1994). A peer review action is presumed to have met the preceding standards necessary for immunity. 42 U.S.C. § 11112. However, if a plaintiff challenging a peer review action proves, by a preponderance of the evidence, any one of the four requirements was not satisfied, the peer review body is no longer afforded immunity from damages under the Health Care Quality Improvement Act. 42 U.S.C. § 11112(a); *see, e.g., Islami v. Covenant Medical Center, Inc.*, 822 F. Supp. 1361, 1377-78 (N.D. Iowa 1992) (review participants not entitled to immunity as matter of law because plaintiff presented sufficient evidence for a jury to conclude review participants did not provide plaintiff with fair and adequate process). Courts apply an objective standard in determining whether a peer review action was reasonable under 42 U.S.C. §11112(a). *See, e.g., Mathews v. Lancaster Gen'l Hosp.*, 87 F.3d 624, 635 (3d Cir. 1996); *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992).

In the present case, the formal peer review hearing was held to determine whether Dr. Brown had agreed to seek consultation for high-risk obstetrical patients and if so, whether Dr. Brown had breached this agreement. During the hearing, Ms. Miller outlined the hospital's position, and the Panel reviewed the charts of two patients Dr. Brown treated. Both Dr. Williams and Dr. Brown testified at the hearing. Following approximately two hours of deliberations, the review panel concluded Dr. Brown had breached her agreement to obtain appropriate consultation and recommended removal of Dr. Brown's privileges to practice obstetrics at Lincoln County Medical Center.

At trial, Dr. Brown presented sufficient evidence for a reasonable jury to find, by a preponderance of the evidence, the peer review action was not taken after a "reasonable effort to obtain the facts of the matter." Dr. Norman Lindley, a physician specializing in obstetrics and gynecology, testified on behalf of Dr. Brown. Dr. Lindley reviewed the charts for every obstetrics patient Dr. Brown treated for the six-month period preceding her revocation and concluded Dr. Brown recognized high-risk obstetrics patients and obtained appropriate consultation when necessary. Dr. Lindley also testified the peer review panel's review of only two charts prior to revoking Dr. Brown's obstetrical privileges was

unreasonably narrow and did not provide a reasonable basis for concluding Dr. Brown posed a threat to patient safety.

Thus, from Dr. Lindley's testimony, a reasonable jury could have found the panel's review to be unreasonably restrictive and not taken after a "reasonable effort to obtain the facts." Such a finding removes the defendants from the qualified immunity provided by the Health Care Quality Improvement Act. Hence, we conclude the district court did not err in failing to find Presbyterian Healthcare Services, Ms. Miller and Dr. Williams immune, as a matter of law, from damages stemming from the revocation of Dr. Brown's obstetrical privileges.[9]

---

[9] The defendants appear to argue the testimony of Dr. Lindley is irrelevant because the defendants presented evidence from a number of doctors who testified the review panel's actions satisfied the requirements of 42 U.S.C. § 11112(a). According to the defendants, "a difference of opinion among experts" does not raise an issue as to the objective reasonableness of the inquiry. We are not persuaded by the defendant's view. Under its theory, a peer review participant would be absolutely immune from liability for its actions so long as it produced a single expert to testify the requirements of 42 U.S.C. § 11112(a) were satisfied. This would be in direct contravention to Congress' intention to provide "qualified immunity." Moreover, to remove a plaintiff's claims from the jury simply because "a difference of opinion among experts" exists would abrogate the jury's responsibility to weigh the evidence and determine the credibility of witnesses. *See, e.g., Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 930 (10th Cir.) ("entire jury system is anchored to the jurors' determination of credibility of witnesses and the weight to be given their testimony"), *cert. denied*, 469 U.S. 853 (1984). Thus, in determining whether a peer review participant is immune under the Health Care Quality Improvement Act, the proper inquiry for the court is whether Dr. Brown has provided sufficient evidence to permit a jury to find she

Next, Ms. Miller argues the district court erred in failing to find her immune, as a matter of law, from damages on Dr. Brown's defamation claim. The Health Care Quality Improvement Act confers immunity on any person who makes a report to the National Practitioner Data Bank "without knowledge of the falsity of the information contained in the report." 42 U.S.C. § 11137(c) (1994). Thus, immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false.

Although the data bank report in this case listed the reason for Lincoln County Medical Center's disciplinary action as "negligence/incompetence/malpractice," the record reveals neither the review panel nor the hospital's Board of Trustees ever found Dr. Brown negligent, incompetent or guilty of malpractice. Rather, the review panel merely determined Dr. Brown breached her agreement to obtain appropriate consultation. Although the panel members were "concerned that [Dr. Brown] does not recognize complicated obstetrics or is reluctant to refer such cases," the panel "felt that Dr. Brown was competent to do uncomplicated

has overcome, by a preponderance of the evidence, any of the four statutory elements required for immunity under 42 U.S.C. § 11112(a). *See, e.g., Austin*, 979 F.2d at 734. In this case, we believe Dr. Brown presented sufficient evidence to overcome the presumption and allow the issue to be decided by the jury.

-25-

obstetrics." Ms. Miller, who was involved in the preparation and review of the report, received a copy of the committee's written findings and was fully aware of the committee's conclusions and the Board of Trustee's action against Dr. Brown. Thus, the record contains sufficient evidence from which a reasonable jury could have concluded the data bank report was false and Ms. Miller knew of its falsity. We therefore affirm the district court's determination Ms. Miller is not immune from defamation damages, as a matter of law, under the Health Care Quality Improvement Act.

Presbyterian Healthcare Services, Ms. Miller and Dr. Williams also claim the district court erred in failing to enter judgment as a matter of law in their favor on the merits of Dr. Brown's antitrust claims. The jury in this case determined Ms. Miller and Dr. Williams joined in a conspiracy to exclude Dr. Brown from competing in the Ruidoso, New Mexico, market. However, the jury did not conclude Presbyterian Healthcare Services participated in the conspiracy. Since the decision to revoke Dr. Brown's medical privileges was made by an independent, nonconspirator (Lincoln County Medical Center's Board of Trustees), the defendants contend Ms. Miller and Dr. Williams could not have proximately caused the revocation and, therefore, cannot be held liable for Dr. Brown's injuries.

A private plaintiff seeking to invoke the antitrust laws must show the defendants caused her alleged injury. *Todorov v. DCH HealthCare Authority*, 921 F.2d 1438, 1459 (11th Cir. 1991) (citing *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986)). The key question in determining the defendants' ability to "cause a restraint [of trade] to be imposed" is whether the defendants had control over the decisionmaking process, or the ability to coerce or unduly influence the decision. *See Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 705-06 (4th Cir. 1991) (medical staff had no control where Board of Trustees requested and encouraged medical staff to take corrective action), *cert. denied*, 502 U.S. 1074 (1992); *Weiss v. York Hosp.*, 745 F.2d 786, 819 n.57 (3d Cir. 1984) (given dominant role of medical staff and limited nature of review, evidence supported jury's finding medical staff violated antitrust laws), *cert. denied,* 470 U.S. 1060 (1985); *Islami v. Covenant Medical Center, Inc.*, 822 F. Supp. 1361, 1383 (N.D. Iowa 1992) (medical staff had ability to coerce or unduly influence decision). Where a reasonable jury could conclude from the evidence that the defendants controlled, coerced, or unduly influenced the decision that resulted in a restraint of trade, a genuine issue of material fact exists on the issue of causation. *Oksanen*, 945 F.2d at 705-06; *Weiss*, 745 F.2d at 819 n.57; *Islami*, 822 F. Supp. at 1383.

Here, neither Ms. Miller nor Dr. Williams voted on the decision to revoke Dr. Brown's obstetrical privileges. However, the record reveals both Ms. Miller and Dr. Williams played an influential role in bringing about the revocation. The jury heard evidence at trial which tended to show Dr. Williams, a competitor of Dr. Brown, and Teresa McCallum, a nurse who had made anti-semitic remarks about Dr. Brown in Dr. Williams' presence, were responsible for identifying all five of Dr. Brown's charts that were reviewed during the two peer review proceedings. Dr. Williams authored the criticisms that Ms. Miller sent to the outside reviewing physicians, and she testified against Dr. Brown at the revocation peer review proceeding. Ms. Miller asked Dr. Williams to prepare the summary of criticisms that were attached to the cases sent to the outside reviewing physicians even though Dr. Brown had complained to Ms. Miller about a personality conflict between Dr. Williams and Dr. Brown. Furthermore, Ms. Miller instituted the formal peer review proceedings against Dr. Brown by sending a complaint to the Medical Staff Executive Committee, she presented the "hospital's position" at the formal review proceeding, and she served on the Board of Trustees.

Thus, the record is replete with evidence tending to show Ms. Miller and Dr. Williams were the catalysts behind, or played a crucial role in, every step of

-28-

the proceedings against Dr. Brown. Viewing the entire evidence in the light most favorable to Dr. Brown, we believe a reasonable jury could have concluded Dr. Williams and Dr. Brown controlled, coerced or unduly influenced the decisionmaking process. We therefore affirm the district court's denial of the defendants' motion for judgment as a matter of law on the merits of Dr. Brown's antitrust claims.

Finally, Ms. Miller argues the district court erred in failing to grant judgment as a matter of law in her favor on the merits of Dr. Brown's defamation claim. According to Ms. Miller, Dr. Brown failed to establish the data bank report caused actual injury to her reputation. Under New Mexico law, a plaintiff must prove actual injury to state a claim for defamation; damages cannot be presumed in a defamation action. *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1236 (N.M. 1989) (citing *Poorbaugh v. Mullen*, 653 P.2d 511, 520 (N.M. Ct. App.), *cert. denied*, 653 P.2d 878 (N.M. 1982)). However, actual injury is not limited to out-of-pocket loss. *Id.*; *see also Cowan v. Powell*, 856 P.2d 251, 253 (N.M. Ct. App. 1993). As stated by the New Mexico Supreme Court in *Newberry*, "the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal

humiliation, and mental anguish and suffering." 773 P.2d at 1236 (quoting

*Marchiondo v. Brown*, 649 P.2d 462, 470 (N.M. 1982)).

In the case at bar, the record reveals Dr. Brown sought to obtain obstetrical privileges at Gerald Champion Memorial Hospital after the revocation by Lincoln County Medical Center. Pursuant to federal regulations, every hospital that receives an application for clinical privileges must check with the National Practitioner Data Bank for reports on the applicant. 45 C.F.R. § 60.10(a)(1) (1995). Thus, as part of the application process at Gerald Champion Memorial Hospital, Dr. Brown had to undergo a hearing and explain the reason Lincoln County Medical Center revoked her obstetrical privileges. As the district court found, we believe sufficient evidence exists for a jury to have concluded Dr. Brown suffered impairment of reputation and standing in the community or personal humiliation when she had to explain why Lincoln County Medical Center revoked her privileges based on "negligence/incompetence/malpractice." Although Gerald Champion Memorial Hospital ultimately granted obstetrical privileges to Dr. Brown, "an opportunity for rebuttal seldom suffices to undo harm [sic] of defamatory falsehood." *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 n.9 (1974). We therefore affirm the district court's decision to deny the

defendants' motion for judgment as a matter of law on the merits of Dr. Brown's defamation claim.

## V. Conclusion

For the reasons stated above, we **REVERSE** the district court's order and judgment vacating the jury's award of compensatory and punitive damages on Dr. Brown's tortious interference with contract claim. We **AFFIRM** the judgment of the district court in all other respects.