FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2016 MAY 23 AM IC: 43



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ERIC R. SHIBLEY, M.D., | ) | No. 72855-5-I |
| | ) | |
| Appellant/Cross Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KING COUNTY PUBLIC HOSPITAL | ) | |
| DISTRICT NO. 4, d/b/a SNOQUALMIE | ) | |
| VALLEY HOSPITAL, a municipal | ) | |
| corporation; KIMBERLY WITKOP, M.D., | ) | |
| individually; the marital community of | ) | |
| KIMBERLY WITKOP, M.D. and LESTER | ) | |
| C. WITKOP; and RICHARD J. PISANI, | ) | |
| M.D., | ) | |
| | ) | |
| Respondents/Cross Appellants. | ) | FILED: May 23, 2016 |
| | ) | |

APPELWICK, J. — Dr. Shibley sued Snoqualmie Valley Hospital for damages after SVH terminated his employment and clinical privileges due to his unprofessional conduct. The trial court granted summary judgment in favor of SVH. Dr. Shibley argues that the trial court erred in holding that SVH was entitled to immunity from suit. He argues that the trial court erred in dismissing his employment and termination related claims. SVH argues that the trial court erred in denying its motion for attorney fees. SVH contends that it is also entitled to attorney fees on appeal. We affirm.

## FACTS

Dr. Eric Shibley was employed as a hospitalist by King County Public Hospital District No. 4. He worked at Snoqualmie Valley Hospital (SVH) under an employment agreement that was effective as of September 1, 2010.

On February 8, 2011, patient S.T. was transferred to SVH. She had just had surgery and required close medical attention to ensure that her wound did not become infected. Dr. Shibley was the hospitalist on duty at the time. He was responsible for performing a history and physical examination of S.T. upon admission. But, he did not examine S.T. on February 8. Dr. Shibley was scheduled to go off duty the next day and transfer patient care to Dr. Richard Pisani, the other hospitalist at SVH. On February 9, while Dr. Shibley was still on duty, Dr. Pisani went to see S.T. S.T. and her husband told Dr. Pisani that he was the first doctor they had seen since her admission to the hospital. When Dr. Shibley and Dr. Pisani met later that day to transfer patient care, Dr. Pisani noticed that Dr. Shibley was dictating a history and physical examination for S.T.

On February 16, 2011, Dr. Shibley and Dr. Pisani had a heated disagreement about the proper treatment for another patient, R.B. During that discussion, Dr. Pisani asked Dr. Shibley about S.T. According to Dr. Pisani, Dr. Shibley admitted that he had not examined S.T. Later that day, Dr. Shibley spoke with Dr. Kimberly Witkop, his supervisor. He told her about his earlier interaction with Dr. Pisani. Dr. Shibley told Dr. Witkop that Dr. Pisani had accused him of documenting a history and physical on S.T. without performing a physical

2

examination. Dr. Witkop then asked Dr. Shibley if the accusation was true, and he said it was.

On February 17, 2011, Dr. Witkop and Gary Brenner, the interim human resources director, met with Dr. Shibley. Dr. Witkop told Dr. Shibley that she was concerned that he had documented a history and physical examination without examining the patient. Dr. Shibley again acknowledged, in the presence of both Dr. Witkop and Brenner, that he had not performed the history and physical examination of S.T. Dr. Witkop told Dr. Shibley that SVH was terminating his employment.

Dr. Shibley signed a severance agreement and release on March 1, 2011. SVH provided him with 30 days of severance pay in compensation for signing the severance agreement. The severance agreement stated that Dr. Shibley unconditionally released SVH from any and all claims stemming from his employment or termination.

On March 14, 2011, Dr. Shibley was notified that SVH's Medical Executive Committee (MEC) voted to terminate his clinical privileges, effective March 8, 2011. The letter cited Dr. Shibley's unprofessional conduct as the reason. And, it notified Dr. Shibley that he could request a hearing before a three member panel to contest the MEC's recommendations.

Also on March 14, SVH submitted an adverse action report concerning Dr. Shibley to the National Practitioner Data Bank (NPDB). The NPDB collects information from health care entities so as to improve health care quality, protect the public, and reduce health care fraud. Health care entities—including

hospitals—are required to report certain adverse actions to the NPDB. SVH's first report concerning Dr. Shibley classified its adverse action as a revocation of clinical privileges and termination of employment. And, it stated that Dr. Shibley's employment and privileges were terminated because of "one act of unprofessional conduct exhibited as documentation of conducting a patient history and physical without having examined the patient."

Then, on April 12, 2011, SVH submitted a second adverse action report to the NPDB. This report was identical to the first report, except it labeled the action taken as a summary suspension of Dr. Shibley's clinical privileges, rather than a termination.

On March 18, 2011, Dr. Shibley requested a hearing to challenge the MEC's recommendation that his privileges be terminated. This hearing was held in May and June 2011, before a three member panel. Dr. Shibley was represented by counsel at this hearing. He called S.T. and her husband to testify, and he questioned Dr. Witkop, Dr. Pisani, and Brenner. The panel found that Dr. Shibley falsified the history and physical for S.T., upholding the MEC's recommendation.

Dr. Shibley then took advantage of his right of final appellate review by SVH's Board of Commissioners (Governing Body). The Governing Body affirmed both the MEC and the panel, permanently terminating Dr. Shibley's privileges on January 5, 2012.

SVH also reported Dr. Shibley to the Washington Department of Health Medical Quality Assurance Commission. Dr. Shibley stipulated that he dictated an inaccurate note relating to S.T.'s vital signs and physical examination. As a result,

4

the Commission found that Dr. Shibley committed unprofessional conduct in violation of RCW 18.130.180(4). On November 6, 2012, the Commission entered its order placing Dr. Shibley's credentials on probation.

Dr. Shibley sued SVH, Dr. Witkop, and Dr. Pisani (collectively "defendants"). He alleged ten causes of action: negligence, breach of contract, national origin/race/ethnicity discrimination; wrongful discharge; chapter 7.24 RCW declaratory judgment; defamation against SVH and against all other defendants; violation of the Washington Consumer Protection Act, chapter 19.86 RCW; violation of the Washington blacklisting statute, RCW 49.44.010; and vicarious liability.

Defendants moved for summary judgment. The trial court granted this motion on November 20, 2014. In reaching this conclusion, the trial court dismissed both Dr. Witkop and Dr. Pisani as defendants, because there was no legitimate cause of action against either of them. And, the court found that no reasonable finder of fact could conclude that the hospital was negligent in firing Dr. Shibley or that it breached a contract with him. The trial court also found that SVH did not breach any duty to Dr. Shibley with regard to its reports to the NPDB. Furthermore, the court found that SVH was immune from liability for these reports and Dr. Shibley had waived his right to challenge them.

Defendants then moved for attorney fees and costs, and the trial court denied their motion. Dr. Shibley appeals the dismissal of his lawsuit on summary judgment. Defendants cross appeal the denial of their motion for attorney fees.

DISCUSSION

Dr. Shibley argues that the trial court erred in dismissing his lawsuit on summary judgment. He claims that SVH was not entitled to immunity for its reports to the NPDB, because it failed to follow the proper procedures and it defrauded him. And, he asserts that the trial court erred in holding that he released SVH from liability for his employment and termination related claims. Defendants cross appeal, arguing that they were entitled to attorney fees below, and they are also entitled to attorney fees on appeal

Summary judgment is proper when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact. CR 56(c). The moving party has the burden to establish that there is no genuine dispute over a material fact, and reasonable inferences must be drawn in favor of the nonmoving party. Atherton Condo. Apartment-Owners Ass'n Bd. Of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Summary judgment should be granted only if a reasonable person could reach only one conclusion. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We review summary judgment rulings de novo, engaging in the same inquiry as the trial court. Id.

I.    SVH's Immunity for Reporting to the NPDB

Dr. Shibley argues that SVH failed to follow the appropriate procedures before it took action against his privileges. And, he claims that SVH defrauded and defamed him through its reports to the NPDB. As a result, he contends that the trial court erred by concluding that SVH was entitled to immunity.

6

The Health Care Quality Improvement Act of 1986 (HCQIA), recognizes the need to improve medical care by encouraging physician peer review.[1] 42 U.S.C. § 11101. The HCQIA does this by requiring health care entities to report certain actions taken against physicians. 42 U.S.C. § 11133(a). Under this statutory scheme, any person who participates with or assists a professional review body with a professional review action is immune from liability damages. 42 U.S.C. § 11111(a)(1). Immunity is granted, so long as the peer review action meets the requirements of 42 U.S.C. § 11112(a). 42 U.S.C. § 11111(a)(1). These requirements are that a peer review action must be taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a). A peer review action is presumed to meet these requirements, unless the plaintiff rebuts the presumption by a preponderance of the evidence. 42 U.S.C. § 11112(a).

The HCQIA specifies the notice and hearing procedures that are adequate or fair under the circumstances. 42 U.S.C. § 11112(b). It provides that a health care entity meets this requirement if it provides the physician notice of the

---

[1] Washington has explicitly adopted the HCQIA in its Health Care Peer Review Act, clarifying that the federal requirements of the HCQIA apply in Washington as well. RCW 7.71.020.

proposed action stating its reasons, notifying the physician that he may request a hearing, and informing him of his rights. 42 U.S.C. § 11112(b)(1). And, if the physician does request a hearing, he must be given notice of the hearing's place, time, and date, and a list of the witnesses expected to testify. 42 U.S.C. § 11112(b)(2). If a hearing is held, it must be before an impartial decision-maker. 42 U.S.C. § 11112(b)(3). At the hearing, the physician has the right to be represented by an attorney, have a record made of the proceedings, call and cross-examine witnesses, present evidence, and submit a written closing statement. 42 U.S.C. § 11112(b)(3). However, failure to follow these procedures does not automatically mean that a hospital did not meet the requirements of 42 U.S.C. § 11112(a)(3). 42 U.S.C. § 11112(b). In fact, the statute recognizes that these procedures should not be construed as "precluding an immediate suspension or restriction of clinical privileges, subject to subsequent notice and hearing or other adequate procedures, where the failure to take such an action may result in an imminent danger to the health of any individual." 42 U.S.C. § 11112(c).

As a preliminary matter, Dr. Shibley contends that SVH's adverse action was invalid, because he did not have privileges to act against. He argues that under the medical staff bylaws (Bylaws),[2] his privileges terminated six months after they were granted. Article 4, Section 4(b) of the Bylaws provides for clinical privileges: "Provisional Medical Staff members shall be provisionally granted

---

[2] The medical staff practicing at SVH have adopted the Bylaws to promote quality health care, encourage quality professional performance, provide rules governing the medical staff, and institute procedures to discuss relevant issues.

Clinical Privileges. Their performances shall be observed by the Medical Executive Committee to determine the eligibility of such provisional members for membership on the Active Medical Staff and for exercising the Clinical Privileges provisionally granted to them." Article 4, Section 4(a) of the Bylaws addresses medical staff appointments,

> All initial appointments to the Medical Staff shall be to the provisional Medical Staff for a period of six months. At the conclusion of six months, the Medical Staff will: (i) recommend the Practitioner be appointed to the active or courtesy Medical Staff according to his or her original application; (ii) be reappointed to the provisional staff for an additional period not exceeding 18 months allowing additional observation; or, (iii) be removed from the Medical Staff. . . . Upon expiration of a Practitioner's appointment to the provisional staff, the failure to transfer the Practitioner from provisional to Active or Courtesy Medical Staff Membership shall be conclusively deemed a termination of his staff appointment.

Because he was originally granted provisional privileges no later than September 1, 2010, Dr. Shibley asserts that his privileges conclusively terminated on February 28, 2011.

We do not read Article 4, Section 4 of the Bylaws as narrowly as Dr. Shibley does.[3] Importantly, article 1, section 5 instructs on how to construe the Bylaws. Section 5(d) provides:

> Time periods referred to in these bylaws for actions by the Medical Staff, its committees and the Governing Body are advisory only and not mandatory. While no such actions shall be required to be accomplished in less time than that specified, extensions should be granted or permitted for reasonable cause or for the convenience of participants. Time periods specified for the giving of or complying with Special Notices, on the other hand, are mandatory and shall be strictly observed and complied with by all parties.

---

[3] Neither party argues that Dr. Shibley's signing of the severance agreement automatically terminated his clinical privileges. Therefore, we look to the Bylaws to analyze whether Dr. Shibley still had privileges when the MEC took action against him.

The time for review of provisional staff appointments and their privileges is not a special notice for purposes of article 1, section 5. Therefore, it is advisory that the MEC review provisional staff appointments prior to the expiration of the initial six month period, not mandatory. And, SVH's director of medical staff services, Barbara Donovan, explained that physicians often remain provisional staff members for 6 to 10 months, depending on how long it takes for the MEC to meet and consider the matter. We conclude that Dr. Shibley's privileges did not automatically expire on February 28, 2011.

Assuming that he did have privileges, Dr. Shibley argues that SVH's reports to the NPDB were invalid for one of two reasons. Either the MEC initially used the correct label, termination, and provided him inadequate procedures, or it initially used the wrong label, reported the more severe sanction of termination, and attempted to defraud him by later changing the label to summary suspension.

The Bylaws provide that when the MEC's corrective action might result in a reduction or suspension of privileges, the physician shall be permitted to appear before the MEC beforehand. But, article 7, section 2 of the Bylaws outlines different procedures appropriate for a summary suspension of privileges. Under this section, the MEC is authorized, "whenever action must be taken immediately in the best interest of patient care in the Hospital, to summarily suspend all or any portion of the Clinical Privileges of a Practitioner, and such summary suspension shall become effective immediately upon imposition." When the MEC exercises this authority, it must provide the physician a written report of the summary suspension. The physician has the right to request the MEC to consider the matter

at its next meeting. The physician also has a right to a hearing before a three member panel and to a final appellate review.

Here, the MEC decided that Dr. Shibley's conduct presented such a serious threat to patient safety that his privileges should be stopped, pending administrative review. SVH communicated this decision to Dr. Shibley in a letter dated March 14, 2011, labeling its action as a termination of privileges. This letter informed Dr. Shibley that he could request a hearing before a three member panel. Also on March 14, SVH reported to the NPDB that Dr. Shibley's privileges had been revoked because of an instance of unprofessional conduct. Dr. Shibley retained a lawyer, who requested a hearing before a three member panel. The next month, on April 12, SVH filed a corrected report with the NPDB, which labeled the adverse action as a summary suspension of privileges. In May and June, Dr. Shibley received a hearing before a three member panel. The panel affirmed the MEC's recommendation. And, in December, Dr. Shibley pursued final appellate review by the Governing Body. The Governing Body affirmed the recommendations of the MEC and the panel. Accordingly, Dr. Shibley's privileges were permanently terminated on January 5, 2012.

Thus, despite SVH's initial label of its adverse action, the record shows that Dr. Shibley's privileges were summarily suspended, not terminated. The panel acted immediately to protect patient safety, and Dr. Shibley received all the process that the Bylaws provide for a summary suspension.[4] The record further

---

[4] Dr. Shibley also asserts that he was denied his constitutional right to procedural due process. But, even assuming that he had a protected property or

shows that when SVH became aware of the erroneous label given to its adverse action, it corrected the mistake by sending a second report to the NPDB. This second report was identical to the first report, except it accurately labeled its adverse action as a summary suspension of privileges rather than a termination. Although Dr. Shibley asserts this correction was part of a cover up intended to defraud him, nothing in the record suggests that SVH sent the corrected report for any reason other than to accurately reflect the action taken.[5]

Dr. Shibley also contends that SVH defamed him by reporting to the NPDB that he had documented a history and physical examination without first examining the patient. He asserts that a question of material fact exists as to whether he actually examined S.T.

---

liberty interest at stake, Dr. Shibley has not explained what additional procedures he was entitled to under the Due Process Clause.

And, due process is flexible. Morissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). When the circumstances require immediate action, post-deprivation process satisfies the requirements of the Due Process Clause. Gilbert v. Homar, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997). Matters of public health and safety—such as the discovery that a physician poses an immediate danger to public safety—require the government to act quickly. N. Am. Cold Storage Co. v. City of Chicago, 211 U.S. 306, 315-16, 29 S. Ct. 101, 53 L. Ed. 195 (1908); Guttman v. Khalsa, 669 F.3d 1101, 1114 (10th Cir. 2012). Because the MEC determined that Dr. Shibley posed an immediate danger to patients at SVH, a hearing after the fact was sufficient to satisfy the Due Process Clause.

[5] And, Dr. Shibley has not shown how he was damaged by SVH's initial mistake and later correction. As he believed he no longer had privileges at SVH, Dr. Shibley was not still attempting to exercise his privileges and denied the opportunity to do so. Nor has he articulated how termination is a more damaging label than summary suspension. He has not produced any evidence to suggest that if SVH originally reported a summary suspension to the NPDB, it would have affected his ability to obtain and keep employment.

But, the MEC decided to summarily suspend Dr. Shibley's privileges because he admitted to committing unprofessional conduct. Dr. Witkop informed the MEC of this admission and Dr. Shibley's resulting termination of privileges. The MEC, after a lengthy discussion, voted to take action against Dr. Shibley's privileges. Later, at the hearing before the three member panel, Dr. Shibley testified that he averaged existing lab results when documenting S.T.'s history and physical. Averaging prior lab results is not standard medical practice, nor did Dr. Shibley indicate that he was doing so on the history and physical. And, in the Medical Quality Assurance Commission's findings of fact, Dr. Shibley stipulated that he inaccurately documented S.T.'s vital signs and physical examination. He agreed to the entry of the Commission's conclusion of law that he committed unprofessional conduct through incompetence, negligence, or malpractice that injures a patient or creates an unreasonable risk that a patient might be injured.

Thus, the MEC made a reasonable effort to obtain the facts before it acted to stop Dr. Shibley's privileges. And, in later proceedings, Dr. Shibley confirmed that he did commit unprofessional conduct—he simply disagreed with how he did so. Dr. Shibley's unprofessional conduct triggered SVH's adverse action. The report to the NPDB of suspension for unprofessional conduct was not false, and therefore could not be defamatory.

The remaining question is whether SVH's actions satisfied the requirements of 42 U.S.C. § 11112(a) such that SVH is entitled to immunity. In arguing that they did not, Dr. Shibley compares this case to Brown v. Presbyterian Healthcare Services, 101 F.3d 1324 (10th Cir. 1996) and Osuagwu v. Gila Regional Medical

Center, 850 F. Supp. 2d 1216 (D.N.M. 2012). In Brown, the physician presented sufficient evidence that the defendants did not make a reasonable effort to obtain the facts before taking a peer review action. 101 F.3d at 1333. And, the NPDB report listed the disciplinary action as negligence, incompetence, or malpractice, but the review panel and the Board of Trustees never found the physician negligent, incompetent, or guilty of malpractice. Id. at 1334. From this, the court concluded that a reasonable jury could have determined that the report was false and the defendants knew of its falsity. Id. In Osuagwu, the physician presented evidence that the peer review hearings did not give him an opportunity to confront and cross-examine witnesses against him, and the panel was not impartial. 850 F. Supp. 2d at 1239. And, the physician presented evidence that the defendants did not make a reasonable effort to obtain the facts of the case. Id. Therefore, the physicians in both Brown and Osuagwu met their burden of rebutting the presumption that the peer review actions met the standards of 42 U.S.C. § 11112(a). Brown, 101 F.3d at 1334; Osuagwu, 850 F. Supp. 2d at 1239. The defendants were not entitled to immunity. Brown, 101 F.3d at 1334; Osuagwu, 850 F. Supp. 2d at 1239.

Here, Dr. Shibley did not present evidence rebutting the presumption that SVH met the requirements of 42 U.S.C. § 11112(a). Although he claims that SVH made the adverse action reports without making a reasonable effort to obtain the facts, he does not support this claim with evidence. Instead, the facts show that Dr. Shibley's employment was terminated because he admitted to multiple people

that he falsified a patient's history and physical. Dr. Witkop informed the MEC of this incident of unprofessional conduct and Dr. Shibley's termination.

Moreover, there is no evidence to suggest that SVH failed to obtain the facts or was aware of any falsity in its reporting to the NPDB. Dr. Shibley has not shown that SVH knew that termination was an inaccurate characterization of the MEC's action at the time this first report was made. Instead, Dr. Shibley's communications with Jay Rodne, SVH's general counsel, show that SVH made a corrected report to the NPDB once it realized that the action was more accurately considered a summary suspension.

Nor has Dr. Shibley shown that the procedures afforded to him were not fair under the circumstances. Under 42 U.S.C. § 11112(c), notice of the proposed action is not required when the failure to take action may result in imminent danger to the health of any individual. Here, the MEC believed that immediate action was necessary to protect patient safety, and it followed the procedures set out in the Bylaws for emergency action. Unlike in Brown and Osuagwu, Dr. Shibley has not demonstrated by a preponderance of the evidence that SVH's actions did not comply with 42 U.S.C. § 11112(a).

We hold that SVH was entitled to immunity for its reports to the NPDB. Therefore, all of Dr. Shibley's claims relating to SVH's reports to the NPDB were properly dismissed on summary judgment.

II.    Dr. Shibley's Employment and Termination Related Claims

The remainder of Dr. Shibley's arguments address the dismissal of his claims related to his employment and termination. He asserts that SVH breached

his employment agreement and the Bylaws by terminating him without providing him notice and an opportunity to cure. And, he argues that Dr. Witkop terminated him in retaliation for his exercise of his First Amendment right to free speech.

After SVH terminated Dr. Shibley's employment, he signed a severance agreement. In the severance agreement, Dr. Shibley explicitly agreed to unconditionally release SVH and its employees "from any and all claims, demands, liabilities, and causes of action of every kind stemming from or in any way related to [his] employment by District or the termination of the employment relationship." Dr. Shibley received severance pay in exchange for this release. Dr. Shibley has not made any demonstration that this agreement is unenforceable. Therefore, we conclude that the severance agreement bars Dr. Shibley's employment and termination related claims.

Consequently, the trial court properly dismissed Dr. Shibley's claim that SVH breached the employment agreement. Dr. Shibley asserts that under the employment agreement, SVH was required to give him notice and a reasonable opportunity to cure before it terminated him. But, whether SVH complied with the employment agreement when it terminated Dr. Shibley falls within the category of claims relating to Dr. Shibley's employment and termination that he contracted away. Dr. Shibley cannot now challenge this aspect of his termination.

Dr. Shibley's retaliation claim is also barred by the severance agreement. Dr. Shibley asserts that Dr. Witkop terminated his employment in retaliation for exercising his right of free speech. But, Dr. Witkop's motivation for terminating Dr. Shibley's employment is related to the termination of his employment. Dr. Shibley

released not only SVH, but also its employees from all claims related to his termination. He cannot now contend that Dr. Witkop terminated him in retaliation for exercising his right of free speech.

Dr. Shibley has not stated a cause of action that is unrelated to either SVH's reports to the NPDB or his employment and termination. Therefore, we hold that the trial court did not err in granting summary judgment to Defendants.

## III. Attorney Fees

Defendants cross appeal, arguing that the trial court erred in denying their motion for attorney fees and costs. And, they contend that they are entitled to attorney fees on appeal.

In the court below, Defendants argued that they were entitled to attorney fees under RCW 70.41.210, 42 U.S.C. § 11113, RCW 7.71.035, and the Bylaws. The trial court declined to award attorney fees on any of these bases. We review the legal basis for an attorney fee award de novo, and we review a discretionary decision to award or deny attorney fees for an abuse of discretion. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

Defendants argue that attorney fees are mandatory under the state reporting statute. RCW 70.41.210 requires the chief administrator or executive officer of a hospital to report to the Washington Department of Health when a health care practitioner's practice is restricted, suspended, limited, or terminated because the practitioner committed unprofessional conduct. And, it provides immunity from suit for any hospital or administrator who files a report under this section, unless the report is based on a finding that was not made in good faith.

17

RCW 70.41.210(5). It also allows for an award of reasonable attorney fees to the prevailing party in an action alleging the finding or report was not made in good faith. Id. This statute is distinct from the federal reporting scheme, which governs reports to the NPDB, rather than the state Department of Health.

RCW 70.41.210(5) clearly mandates attorney fees only for a report filed "under this section," meaning with the Department of Health. In the amended complaint, Dr. Shibley asserted on several occasions that the report to the NPDB was false. But, Dr. Shibley never alleged that the separate report made to the Department of Health was false. Nor did he claim that this separate report constituted a cause of action. Therefore, attorney fees were not mandatory under RCW 70.41.210.

Defendants also argue that they are entitled to discretionary attorney fees under RCW 7.71.035, 42 U.S.C. § 11113, and the Bylaws. They claim that Dr. Shibley's claims were entirely precluded by immunity and release, so his lawsuit cannot be considered well-intentioned.

The Washington health care peer review act provides that in an action under RCW 7.71.030, the court shall award attorney fees to the prevailing party, if the other party's claim, defense, or conduct was frivolous, unreasonable, without foundation, or in bad faith. RCW 7.71.035(1). Similarly, the HCQIA allows for a discretionary award of attorney fees if the professional review action meets the standards set out in 42 U.S.C. § 11112(a), the defendant substantially prevails, and the plaintiff's claim or conduct during litigation was frivolous, unreasonable, without foundation, or in bad faith. Cohlmia v. St. John Med. Ctr., 749 F.3d 1175,

1178 (10th Cir. 2014); 42 U.S.C. § 11113. And, article 2, section 6 of the Bylaws provides that the court may award attorney fees and costs to the prevailing party in a suit concerning membership on the medical staff or clinical privileges at the hospital.

Defendants assert that Dr. Shibley's claims were frivolous, because they were entirely precluded by liability or release. But, several of Dr. Shibley's claims challenged SVH's adverse action reports to the NPDB. These reports occurred after Dr. Shibley was terminated and after he signed the severance agreement. The severance agreement did not address NPDB reports. Whether Dr. Shibley succeeded on those claims turned on whether SVH followed the proper procedures and investigated the facts. This challenge was not frivolous. Even though Dr. Shibley's other claims were precluded by the severance agreement, the trial court concluded that the suit as a whole was not frivolous or in bad faith. We agree.

Defendants further claim that Dr. Shibley's appeal is frivolous, so they should be awarded attorney fees for defending against it. This court has authority to require a party to pay attorney fees as sanctions, terms, or compensatory damages when the party files a frivolous appeal. RAP 18.9(a); Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010). An appeal is frivolous if, in light of the entire record, we are convinced that the appeal has no debatable issues on which reasonable minds could disagree, and the appeal is so meritless that there is no possibility of

reversal. <u>Tiffany Family Trust Corp. v. City of Kent</u>, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). We resolve all doubts against finding the appeal frivolous. <u>Id.</u>

We decline to categorize this appeal as frivolous, for the same reasons that the lawsuit itself was not frivolous. Therefore, we hold that Defendants are not entitled to attorney fees below or on appeal.

We affirm.

Appelwick, J.

WE CONCUR: