*Notice:* *This opinion is subject to correction before publication in the* PACIFIC REPORTER. *Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JENNIFER LOCKWOOD, | ) | |
| | ) | Supreme Court No. S-14552 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-07127 CI |
| v. | ) | |
| | ) | O P I N I O N |
| GEICO GENERAL INSURANCE | ) | |
| COMPANY, | ) | No. 6904 – May 2, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Jeffrey J. Jarvi, Anchorage, for Appellant. David S. Carter, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

FABE, Chief Justice.

I.      INTRODUCTION

Jennifer Lockwood was injured in a car accident caused by an uninsured drunk driver. Lockwood had car insurance through Geico General Insurance Company. After exhausting her policy's medical payments coverage, Lockwood sought payment under her uninsured motorist coverage. Geico offered $750 to settle the uninsured

motorist claim, and Lockwood declined. Geico questioned Lockwood's medical bills because they seemed "high" to the adjusters and refused to make additional medical payments outside of a total settlement of Lockwood's uninsured motorist claim. Geico pointed to the fact that Lockwood had received treatment for a prior back problem, but it took no action to resolve the alleged medical uncertainty, such as requesting an independent medical exam or voluntary arbitration, before refusing to pay for medical expenses. Lockwood paid out of pocket for some of her treatment costs and took out a loan for her remaining medical bills. She later ceased treatment due to its prohibitive cost and experienced ongoing pain.

The parties eventually settled Lockwood's uninsured motorist claim for $25,000. Lockwood brought a tort claim against Geico for alleged breach of the duty of good faith and fair dealing implied in her insurance contract, arguing that Geico unreasonably delayed payment of Lockwood's uninsured motorist claim. Lockwood sought to discover Geico's training and claims-handling manuals, but the superior court denied her request. The superior court subsequently granted summary judgment in favor of Geico on the bad-faith tort claim and awarded attorney's fees.

We reverse the superior court's grant of summary judgment because there is a genuine issue of material fact regarding whether Geico lacked a reasonable basis for delaying payment on Lockwood's uninsured motorist claim. Because we reverse the grant of summary judgment, we vacate the award of attorney's fees and we remand for further proceedings. We also conclude that it was an abuse of discretion to deny discovery of Geico's manuals because they contain information that could be relevant to Lockwood's bad-faith claim.

## II.    FACTS AND PROCEEDINGS[1]

### A.    Car Accident And Injuries

On May 21, 2007, a drunk driver in a large van rear-ended Lockwood while she was stopped at a red light in her Nissan Sentra.  It was undisputed that the drunk driver was entirely responsible for the accident.

Lockwood sustained injuries in the accident.  According to the emergency room report, Lockwood felt tenderness in her neck that night.  The emergency room doctor diagnosed Lockwood with a cervical spine injury and strain of the muscles near the neck.[2]  An X-ray of her neck showed no spinal or "soft tissue abnormalit[ies]."  Lockwood also filled out an injury form for the accident.  In the form Lockwood reported that she experienced a headache, dizziness, and pain in her left wrist, neck, and back.  Lockwood indicated in her affidavit that she continued to experience pain the day after the accident, particularly in her back, neck, and wrist.[3]

### B.    Geico Insurance Policy

The drunk driver was an uninsured motorist, but Lockwood had an automobile insurance policy with Geico General Insurance Company.  Lockwood's policy provided two categories of coverage that are relevant here:  (1) medical payments coverage and (2) uninsured motorist coverage.  The medical payments coverage covered

---

[1]    When reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party.  *See McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001).

[2]    The hospital report lists two diagnoses:  "[c]ervical spine injury" and "[p]aracervical muscle strain."  Cervical means "[r]elating to a neck."  STEDMAN'S MEDICAL DICTIONARY 351 (28th ed. 2006).

[3]    A contemporary report that Lockwood made to her insurer described the same injuries.

"all reasonable [medical] expenses actually incurred by an insured" due to "bodily injury caused by accident," with payments capped at $10,000.[4] The uninsured motorist coverage would "pay damages for bodily injury, caused by an accident, which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle," provided that this benefit would not pay out "until the limits of liability of all bodily injury . . . policies that apply have been used up."[5] The maximum benefit for uninsured motorist coverage was $50,000 per person. The insurance policy established several conditions for receipt of payment under the uninsured motorist coverage, including notice to Geico, "written proof of claim, under oath if required," and willingness to submit to a medical exam if required. The Geico policy explained that "[t]his [proof of claim] will include details of the nature and extent of injuries, treatment and other facts which may affect the amount payable."

## C.    Medical Treatment

The day after the accident, Lockwood went to a local chiropractor. He diagnosed Lockwood with neck and shoulder muscle strains. He ordered an MRI and performed x-rays of Lockwood's neck; both were normal. He informed Geico that his treatment plan for Lockwood consisted of daily chiropractic treatment for two weeks, tapering to three treatment sessions per week. But when Lockwood's back pain continued, she continued her treatment from her chiropractor beyond the initial treatment period.

In July 2007 Geico sent a letter to Lockwood's chiropractor requesting that he provide a complete billing history and all previous treatment records for Lockwood. Geico informed the chiropractor that it was unable to issue payment for services from

---

[4]    Emphasis omitted.

[5]    Emphasis omitted.

June 11, 2007 to July 2, 2007 until Geico received the requested information. Geico's log notes indicate that Geico received the requested records from the chiropractor's office within the month, by August 1, 2007. The records showed that Lockwood had received treatment from the chiropractor before the May 21, 2007 accident for a prior back injury but that Lockwood had last seen the chiropractor on January 5, 2007, about five months before the accident. According to Lockwood's medical records, an orthopedic surgeon determined that Lockwood was medically stable in December 2006.

By July 25, 2007, the chiropractor had released Lockwood to work. Lockwood's back felt sore from her return to work. In the summer of 2008, over a year after the accident, Lockwood was still receiving treatment from her chiropractor for her neck strain and back pain. Lockwood's back pain persisted, and her chiropractor referred her to a medical doctor about a year after the accident.

### D. Exhaustion Of Medical Payments Coverage

Geico initially paid for Lockwood's bills under the medical payments coverage of her insurance policy. Geico paid $2,867 for medical visits and examinations within the first five days of the accident and $7,133 for Lockwood's chiropractic care from May 22, 2007 to August 17, 2007. By August 2007, about 12 weeks after the accident, these medical payments totaled $10,000, and Lockwood exhausted her medical payments coverage. Geico then informed Lockwood about her uninsured motorist coverage and the settlement process.

### E. Dispute Over Uninsured Motorist Coverage And Settlement Of Uninsured Motorist Claim

Lockwood sought payment for her medical costs under her uninsured motorist coverage. But Geico never paid Lockwood's medical bills under her uninsured

motorist policy.[6]  Lockwood paid for $1,000 of her unpaid medical expenses and took out a loan for about $5,000 to cover the rest.  Because she could not afford to pay for continuing treatment, Lockwood eventually stopped treatment even though she maintained that she still suffered back pain.

By May 2008 Lockwood had retained an attorney to pursue medical payments from Geico.  Lockwood's claim for benefits under her uninsured motorist policy was eventually settled after three years of negotiations and the early stages of litigation of her lawsuit against Geico.  Geico had first offered to settle Lockwood's uninsured motorist claim for $750 in June 2007, before she retained counsel.  According to Geico, it based this settlement offer on Lockwood's request for the cost of her son's day care while she was in treatment.  Lockwood declined the offer.

In May 2008 Geico advised Lockwood that it would not consider paying her medical bills "[o]utside [o]f [t]otal [s]ettlement."  A Geico supervisor advised the claims adjuster for Lockwood's case "to try to move the U[ninsured] M[otorist] claim in a posture to attempt to settle."  In July 2008 Geico advised Lockwood's attorney that Lockwood's medical bills seemed "[h]igh."  In April 2009 Lockwood offered to settle

---

[6]     Lockwood alleges that, in addition to denying her coverage, the Geico representatives were abusive, rude, and unprofessional in their dealings with her. Lockwood alleges that during phone calls about her claim, a Geico adjuster hung up on her on two occasions.  She further maintains that when she called Geico about her claim, the Geico adjuster was "sarcastic," "abusive," and "unprofessional" in handling her claim.  She stated in her deposition that, because of the adjuster's negative demeanor, she felt "physically ill."  The Geico adjuster acknowledged that "calls were ended abruptly" but denied hanging up on her.  Lockwood alleged in her affidavit that the Geico adjuster's "rude and unprofessional behavior in handling [her] claim discouraged [her] from working with him to pursue [her] insurance claim after [she] was hit by a drunk driver."

for the policy limit of $50,000, and a month later Geico responded with an offer to settle for $12,000. Lockwood refused the offer.

Lockwood filed her first amended complaint on January 15, 2010, asserting a breach of contract claim under her uninsured motorist coverage and a tort claim for Geico's "breach of the covenant of good faith and fair dealing" implied in the insurance policy.

Faced with a lawsuit, Geico requested for the first time in May 2010, nearly three years after the accident, that a doctor perform an independent medical evaluation of Lockwood. The doctor found that Lockwood experienced "mild discomfort" in her lower back in a range-of-motion test and diagnosed neck muscle and ligament strain or sprain as well as lower back muscle or ligament strain. At the same time, the doctor reported that "[b]ased upon the medical records reviewed, my history taken from Ms. Lockwood, and the physical examination, I could find no objective evidence to support Ms. Lockwood's contention that she hurt her lower back in the accident of May 21, 2007." He further concluded that he would have expected the "[s]oft tissue injuries sustained by Ms. Lockwood in the accident of May 21, 2007, [to be] resolved within six to eight weeks following the date of the accident." His review of her records and medical history "provide[d] no reason to suspect extenuating circumstances which could delay recovery of the soft tissue injuries she sustained."

In August 2010 Geico increased its settlement offer for Lockwood's uninsured motorist claim to $25,000. Lockwood accepted the offer in October 2010 and signed the $25,000 settlement agreement in return for the release of her contract claim against Geico arising from the May 21, 2007 accident. This release expressly preserved Lockwood's "claims for alleged extracontractual/bad faith damages." Lockwood resumed treatment for her back pain after she settled with Geico and reported that resuming treatment "has helped my pain and my condition."

**F.     Discovery Dispute In Lockwood's Bad-Faith Tort Action**

With the bad-faith tort claim before the superior court, Lockwood requested that Geico "produce all claims handling manuals that GEICO provides to, makes available to, or gives access to Alaska adjusters . . . for their use and reference in handling automobile collision claims." Geico objected, denying that the manuals were relevant "to any legitimate issue in this case." Lockwood filed a motion to compel the requested discovery, which the superior court found "exceed[ed] the directive from the court" for "narrowly drafted discovery requests." The superior court directed Lockwood to "either redraft the discovery, or submit further argument as to why . . . the proposed discovery fits the parameters for which the court allowed the [Alaska Civil Rule] 56(f) continuance." After additional briefing, the superior court found that Lockwood's request for the manuals was "still overbroad and requests undiscoverable information and documents" because Lockwood was unable to identify "what specific portions or topics of the materials would be relevant to the very narrow issues before the court." But the superior court also ordered Geico to produce relevant portions of any training materials for in camera review.

In response, Lockwood suggested that the superior court order a "standard, reasonable protective order" providing that "all materials designated 'confidential' by the other side may only be used in this litigation; may not be viewed by anyone other than plaintiff's counsel, their staff, experts and clients in this litigation; must be filed under seal; and must be returned at the end of this litigation."

Geico opposed discovery of the manual but requested that the superior court require a confidentiality agreement and protective order "[i]n the event that the court determines that some portion of the in camera materials should be disclosed to plaintiff." Geico submitted to the superior court the "Claims Function" chapter of its manual. After the superior court's in camera review, it concluded:

Generally, there is nothing contained within the reviewed materials that would expand (if they could) any statutory or common law duty owed by GEICO to [its] insured. Specifically, the documents require the GEICO claims examiners to deal with insurance issues ethically, fairly, and promptly. . . . This hardly novel concept does not justify the release of proprietary information contained in the produced documents. The Court found nothing within the materials that would directly lead to any admissible evidence regarding any complaints concerning payments from different available coverages. The documents will remain sealed within the court file available for further review should plaintiff be able to more particularly state her bad faith allegations against GEICO.

The Court has been informed there are no letters of reprimand or discipline in the requested personnel file.

Lockwood appeals the discovery order, arguing that the Geico's manuals are relevant and discoverable under Alaska Civil Rule 26(b)(1).

### G. Summary Judgment

On February 5, 2010, Geico moved for summary judgment on Lockwood's bad-faith claim, and Lockwood opposed. The superior court granted Geico's motion for summary judgment, reasoning that "none of these facts suffice to raise a factual question as to whether [Geico] lacked a reasonable basis in failing to pay the demanded settlement amount." The superior court cited several reasonable bases for Geico's conduct: "GEICO had ample reason to delay further payments to Plaintiff pending further investigation into the medical necessity of further treatment and a determination

regarding causation of her injuries" and the "extent of damages."[7]  Lockwood appeals the grant of summary judgment to Geico.

## III.    STANDARDS OF REVIEW

We review rulings on motions for summary judgment de novo, "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor."[8]  "A party is entitled to summary judgment only if there is no genuine issue of material fact and if the party is entitled to judgment as a matter of law."[9]  "[T]he burden of showing the absence of a genuine issue as to any material fact is upon the moving party."[10]  Defeating a motion for summary judgment "only requires a showing that a genuine issue of material fact exists to be litigated, and not a showing that a party will ultimately prevail."[11]  "Whether the evidence presented a genuine issue of material fact is a question of law that we independently review."[12]

---

[7]      The superior court also awarded Geico $4,657.40 in partial attorney's fees based on the superior court's determination of reasonable fees related to the bad-faith claim after the settlement of the contractual uninsured motorist claim.  Lockwood appeals the Rule 82 attorney's fee award, claiming that she received a "substantial affirmative recovery" in her settlement with Geico.

[8]      *Lum v. Koles*, 314 P.3d 546, 552 (Alaska 2013) (citation omitted).

[9]      *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, __ P.3d __, Op. No. 6874, 2014 WL 995971, at *5 (Alaska, Mar. 14, 2014) (citation omitted).

[10]      *Wilson v. Pollet*, 416 P.2d 381, 383 (Alaska 1966).

[11]      *Moffatt v. Brown*, 751 P.2d 939, 943-44 (Alaska 1988).

[12]      *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013).

"We review the denial of a motion to compel discovery for abuse of discretion."[13]  "We generally review discovery orders under the deferential abuse of discretion standard, but we apply our independent judgment in deciding whether the trial court weighed the appropriate factors, because that is a legal question."[14]

## IV.    DISCUSSION

Lockwood raises two main arguments that we address in this appeal.  First, Lockwood challenges the summary judgment order, arguing that there were genuine issues of material fact as to whether Geico unreasonably delayed payment.[15]  Second, Lockwood claims that "[t]he superior court erred in not ordering production of [Geico's] claims and training manuals so Lockwood could examine the adjusters about their contents at deposition and so that evidence and testimony could be presented and evaluated at summary judgment and at trial before the jury."

---

[13]     *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999) (citing *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996)).

[14]     *Id.* (citing *In re Mendel*, 897 P.2d 68, 72 n.7 (Alaska 1995)).

[15]     Lockwood also argues that the "record evidence raises fact issues about whether [Geico] violated various provisions of AS 21.36.125 with its pattern of conduct in delaying payment."  But that statute "do[es] not create or imply a private cause of action for a violation of this [statute]."  AS 21.36.125(b); *see also O.K. Lumber Co. v. Providence Wash. Ins. Co.*, 759 P.2d 523, 527 (Alaska 1988) (holding that the Unfair Claim Settlement Practices Act does not provide a private cause of action for insureds or third-party claimants).  Accordingly, Lockwood's statutory argument on appeal is without merit.  Even if there were genuine issues of material fact regarding Geico's violation of AS 21.36.125, Lockwood would have no cause of action under that statute and summary judgment for Geico on the statutory claim would have been proper.

In addition, Lockwood contends that the superior court's award of attorney's fees was improper.  Because we reverse the superior court's grant of summary judgment, we also vacate the award of attorney's fees to Geico without reaching the question whether that award was proper.

## A.    It Was Error To Grant Summary Judgment To Geico.

Under Alaska's contract law, "the covenant of good faith and fair dealing . . . is implied in all contracts."[16] For insurance contracts, breach of this covenant by the insurer gives the insured a cause of action sounding in tort because of "[t]he special relationship between the insured and insurer in the insurance context"[17] and because tort liability "provide[s] needed incentive to insurers to honor their implied covenant to their insureds."[18] "[W]ithout such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed."[19]

Although we have declined to define the elements of the tort of bad faith in an insurance contract,[20] our precedent makes clear that the element of breach at least requires the insured to show that the insurer's actions were objectively unreasonable

---

[16]    *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992) (citing *Alaska Pac. Assur. Co. v. Collins*, 794 P.2d 936, 947 (Alaska 1990)).

[17]    *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1156 (Alaska 1989).

[18]    *Id.* at 1157.

[19]    *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 291 (Alaska 2012) (alteration in original) (quoting *Nicholson*, 777 P.2d at 1156).

We note that an insurer's breach of the covenant of good faith and fair dealing gives the insured the ability to sue in tort as well as contract, with the distinction determining, among other things, which types of damages will be available. *See Weiford*, 831 P.2d at 1266.

[20]    *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1323 (Alaska 1993) ("We had no occasion to comprehensively define the elements of the tort of bad faith in a first-party insurance context in *Nicholson*; we have not done so in subsequent cases, *see e.g.*, [*Weiford*]; nor do we do so now.").

under the circumstances.[21] Thus, in order to prevail on her bad-faith claim at trial, Lockwood will have to show that Geico's delay in payment of her claims breached the covenant of good faith and fair dealing because it was "made without a reasonable basis."[22]

The superior court in this case granted Geico's motion for summary judgment, concluding that there was no genuine issue of material fact as to whether

---

[21]     *See Hillman*, 855 P.2d at 1324 ("[T]he tort of bad faith in first-party insurance cases . . . necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis.").

Whether the insured must *also* show some sort of culpable mental state in addition to objective unreasonableness in a bad-faith insurance tort action is a matter left open by our case law. *See, e.g., Nicholson*, 777 P.2d at 1154 n.3 (reviewing jury verdict finding breach of duty of good faith and fair dealing by insurer under first-party insurance contract where jury was instructed that "[b]ad faith does not mean bad judgment or negligence, but means having a dishonest purpose through some motive of self-interest or ill will, or having maliciousness or hostile feelings toward its insureds, or acting with reckless indifference to the interests or rights of its insureds," but disposing of case on other grounds and not reviewing propriety of jury instruction); *Ennen*, 268 P.3d at 287-88 (upholding bench trial decision that insurer tortiously breached duty of good faith and fair dealing owed to insured where insurer engaged in no " 'intentional' scheme to 'deceive and deny [underinsured motorist] claims' " but nonetheless acted objectively unreasonably under the circumstances and was reckless with regard to its unreasonableness); *cf. Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 143-45 (Alaska 2004) (disapproving use of *Nicholson* jury instruction in bad-faith tort action against insurer for failure to settle third-party claim against insured within policy limits); *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 293 (Alaska 1980) (holding "that an insurer, defending an action against the insured, is bound to exercise that degree of care which a man of ordinary prudence would exercise in the management of his own affairs . . . irrespective of fraud or bad faith." (citation omitted)). We decline to address this issue now because it is unnecessary for us to do so in the course of reversing the superior court's grant of summary judgment.

[22]     *Hillman*, 855 P.2d at 1324.

Geico acted unreasonably by delaying payment on Lockwood's uninsured motorist benefits. We conclude that summary judgment was improperly granted in this case.

Looking at the circumstances of this case as a whole and viewing the evidence and reasonable inferences therefrom in a light most favorable to the non-moving party, we conclude that there is a genuine issue of material fact as to Geico's reasonableness in delaying payment on Lockwood's uninsured motorist claim. First, Geico initially offered to settle Lockwood's uninsured motorist claim in June 2007 for just $750. Geico based this offer solely on Lockwood's childcare expenses and not on her medical condition, the connection of that condition to the car accident, her expected medical bills, general damages, or lost wages. After exhaustion of her medical payment benefits, Lockwood was continuing to incur medical expenses and suffer lost wages and other non-economic general damages. Under these circumstances, in conjunction with the other factors discussed below, a genuine issue of material fact exists as to whether an offer of $750 was unreasonable behavior on the part of an insurer subject to the duty of good faith and fair dealing.[23]

Second, Geico decided in May 2008 not to pay any of Lockwood's medical bills after exhaustion of the medical payments benefits without a total settlement of the uninsured motorist claim. Drawing all reasonable inferences in favor of Lockwood, a genuine issue of material fact exists as to whether the basis for Geico's decision was unconnected to Lockwood's actual medical condition but rather motivated by the exhaustion of the medical payments benefits. If Geico had legitimate concerns about the extent of Lockwood's injuries, an inference can be drawn that a reasonable insurer would advise her of those concerns with specificity and either ask Lockwood for more medical

---

[23]     *Cf. Weiford*, 831 P.2d at 1268-69 (concluding that an initial settlement offer of $5,000, which was low in the context of the damages and ultimate outcome in that case, "might support a fact finder's conclusion that [the insurer] was guilty of bad faith").

information or ask for an independent medical exam. Geico took no such actions at the time it demanded a global settlement. This could raise the question whether Geico's decision to condition additional medical payments on a global settlement actually was connected to Lockwood's medical situation and the accident.

Third, Geico denied any further payment under the uninsured motorist policy and declined to make any further attempts to reach a settlement, based solely on its unsubstantiated doubts about the necessity of medical care for injuries sustained in the accident. Lockwood presented evidence in her deposition, affidavit, and medical records that she experienced ongoing, life-changing pain as a result of the accident and having to cease treatment.[24] Geico noted that she had had a prior back injury[25] and expressed concern that her medical bills were "high" in the context of this accident. But other than asserting these doubts, Geico did nothing to reduce the alleged medical uncertainty about the cause of Lockwood's pain or to clarify the necessity of further treatment from the chiropractor. Geico did not request a second medical opinion or an independent medical exam until 2010, about three years after it stopped paying Lockwood's medical bills. Indeed, Geico's staff did not cite a medical basis of any kind to call into question the chiropractor's treatment for Lockwood's injuries in 2007. Geico did not seek to use the voluntary-arbitration clause present in the insurance contract to resolve the issue of medical uncertainty. Nor did Geico inform Lockwood what she would have to do to resolve the medical uncertainty to Geico's satisfaction. Geico took none of these

---

[24] She explained in her deposition that her back pain has "definitely cut[] down on" her "every day activities" and "changed . . . [her] way of life." She claimed that even daily activities were difficult: "[f]olding laundry, after a while I'm in pain, I can't finish it." Three years after the accident, she described her back as "hurt[ing] about six out of seven days a week." She reported that she finds "it difficult to roll over in bed without pain" and that her "lower back pain is worse than [her] neck pain."

[25] A doctor had pronounced her prior back injury stable as of 2006.

affirmative steps to clarify the alleged medical uncertainty after Lockwood presented all requested information to Geico.[26]

Taking these circumstances and all reasonable inferences that may be drawn from the facts favorable to Lockwood, we conclude that a genuine issue of material fact exists as to whether Geico acted unreasonably by delaying payment on Lockwood's uninsured motorist benefits. Geico argues that it had several reasonable bases to delay payment in this case: the severity of the car accident that "did not involve a heavy impact," Lockwood's "high" medical bills in light of "a diagnosis of a neck strain," and the fact that "Lockwood had recently treated with her chiropractor for more than a year, with similar complaints." Whether or not Geico's arguments ultimately prevail at trial, they are insufficient to justify summary judgment. We conclude that, under the three circumstances discussed above, there is a genuine issue of material fact on the questions whether Geico had a reasonable basis for delaying payment of Lockwood's uninsured motorist benefits and whether Geico breached its duty of good faith and fair dealing. We therefore reverse the superior court's grant of summary judgment and remand for further proceedings.[27]

B.     It Was An Abuse Of Discretion To Deny Lockwood's Motion To Compel Discovery Of Geico's Manuals.

After its in camera review, the superior court concluded that the claims function chapter of Geico's manual requires "the GEICO claims examiners to deal with

---

[26]     *See Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1084-89 (Cal. 2007) (affirming reversal of summary judgment for the insurer in a bad-faith insurance tort suit where the insurer delayed payment for two years as a result of its failure to launch a timely investigation to support its medical assertions of a preexisting injury).

[27]     This does not imply that Geico's delay of payment was necessarily unreasonable and thus will constitute bad faith in a trial on the merits. That question can be answered only by the ultimate finder of fact.

insurance issues ethically, fairly, and promptly. . . . This hardly novel concept does not justify the release of proprietary information . . . ." As a result, the superior court denied Lockwood's motion to compel discovery of Geico's manuals, concluding that the manuals would not "directly lead to any admissible evidence regarding any complaints concerning payments from different available coverages." On appeal, Lockwood argues that Geico's manuals are relevant and discoverable under Alaska Civil Rule 26(b)(1) because (1) the "relevancy standard is to be broadly construed at the discovery stage" and (2) "the court impliedly noted that the materials were relevant to [Geico]'s handling of Lockwood's approved [uninsured motorist] claim." Geico replies that, despite the superior court's direction that Lockwood narrow her discovery, she only requested "generic" documents and "failed to articulate the relevance of her demand."

We conclude that the superior court abused its discretion by not compelling relevant discovery. Alaska Civil Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action . . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

As we have stated, our "discovery rules are to be broadly construed and 'relevance for purposes of discovery is broader than for purposes of trial.' "[28]

---

[28] *Lee v. State*, 141 P.3d 342, 347 (Alaska 2006) (quoting *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 461 (Alaska 1986)) (holding that the superior court did not abuse its discretion by granting discovery of corporate documents and information about companies' technologies and employees because they related to liability and a defense); *see also Langdon v. Champion*, 752 P.2d 999, 1004 (Alaska 1988) (construing the attorney-client privilege narrowly in light of " 'our commitment to liberal pre-trial discovery' " (quoting *United Servs. Auto. Ass'n v. Werley*, 526 P.2d (continued...)

After conducting an in camera review of the materials, we conclude that the claims handling chapter of Geico's manual contains information that is arguably relevant to Lockwood's claims. In particular, the portions of the manual that address professional ethics, settlement practices, and negotiations may prove relevant to Lockwood's bad-faith claim. These portions shed light on Geico's standard practices and could lead to admissible evidence as to what a typical investigation entails and whether the Geico adjusters followed standard procedures.[29] We therefore conclude that, under our broad discovery rules, Lockwood is entitled to discover portions of Geico's manuals relevant to Geico's claims-handling practices.

Finally, we note that Lockwood offered to stipulate to a protective order and that Geico requested a confidentiality agreement and protective order to protect confidential information in the manual if the superior court were to compel discovery. The superior court, at its discretion, may issue a protective order to protect confidential information in the materials.

## V. CONCLUSION

Because a reasonable inference could be drawn that Geico did not have a reasonable basis for delaying payment of Lockwood's uninsured motorist benefits, we conclude that there is a genuine issue of material fact as to Geico's bad faith. Accordingly, we REVERSE the superior court's grant of summary judgment and

[28](...continued)
28, 31 (Alaska 1974))).

[29]    While allegations in *Hillman* that the insurer's agents violated company guidelines failed to raise a factual question as to whether the insurer's denial of coverage lacked a reasonable basis because "[t]he denial was based on an explicit exclusion in the policy," *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1325 (Alaska 1993), the guidelines here may assist the fact finder in developing a complete understanding of Geico's handling of Lockwood's claim.

VACATE the award of attorney's fees.  We also REVERSE the superior court's denial of Lockwood's motion to compel discovery of Geico's claims-handling and training materials.  The case is REMANDED for further proceedings consistent with this opinion.