*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL D. BRANDNER, M.D., | ) | |
| | ) | Supreme Court No. S-15513 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-07697 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TIMOTHY BATEMAN, M.D., | ) | |
| RONALD CHRISTENSEN, M.D., | ) | No. 7010 – May 15, 2015 |
| STEVEN L. FLOERCHINGER, M.D., | ) | |
| JEREMY GITOMER, M.D., and | ) | |
| TERRY OLIVAS, M.D., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Patrick J. McKay, Anchorage, Judge.

Appearances: Richard W. Maki and David H. Shoup, Tindall Bennett & Shoup, P.C., Anchorage, for Appellant. Robert J. Dickson and Christopher J. Slottee, Atkinson, Conway & Gagnon, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

BOLGER, Justice.

## I.      INTRODUCTION

Dr. Michael Brandner's hospital privileges at Providence Alaska Medical Center were terminated after he violated hospital policy by failing to disclose an order

from the Alaska State Medical Board that he undergo an evaluation of his fitness to practice medicine. Dr. Brandner appealed to the hospital's Fair Hearing Panel and Appellate Review Committee, but the termination was upheld. Dr. Brandner filed suit against the hospital and several doctors involved in the termination proceedings, alleging breach of contract and denial of due process. The superior court granted summary judgment in favor of the individual doctors because they are immune from suit. We affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Dr. Michael Brandner had hospital privileges at Providence Alaska Medical Center (Providence) since 1995. He took a medical leave of absence from September 2009 to March 2010 due to a cardiac condition. When he returned to work his hospital privileges "were reinstated with the exception of hand surgery, and a six-month exemption from call duties." He was also subject to a one-year prospective review of his surgical cases. Reinstatement of his hand surgery privileges was delayed pending a two-year retrospective review of his hand surgery cases. The review found him competent to continue with hand surgery.

Later in 2010 the Alaska State Medical Board (Medical Board) investigated Dr. Brandner after receiving a report that he had threatened an employee in the Governor's office concerning a child support matter. The Medical Board ordered him to submit to psychiatric and medical evaluations within 45 days "to determine his ability to practice medicine in a manner consistent with public safety." Dr. Brandner was evaluated at the Menninger Clinic in Texas and found fit to practice.

Doctors who have privileges at Providence are required to comply with policies set out in the Providence Code of Conduct and Medical Staff Bylaws. Providence Policy MS 980-150 requires doctors to report to the chief of staff or the

manager of the medical staff services department "any limitations, restrictions[,] or conditions of any sort imposed by a state board, health care entity[,] or agency with respect to the practitioner's practice . . . no later than thirty (30) days after a final order has been issued." The policy states that a violation of this reporting requirement will result in automatic termination of hospital privileges. The body responsible for overseeing doctors' compliance with these policies is the Medical Staff Executive Committee. The executive committee makes recommendations to the Providence Alaska Community Ministry Board (Providence Board), which has the ultimate authority to make decisions regarding hospital privileges.

Dr. Brandner attended the January 2011 executive committee meeting to discuss confusion regarding his call duties. The executive committee was concerned about Dr. Brandner's "disjointed" statements at the meeting. The executive committee "elected to hold another meeting in February to determine whether an investigation should be undertaken to determine Dr. Brandner's fitness to practice medicine at [Providence]." According to Dr. Steven Floerchinger, a member of the executive committee, Dr. Brandner's " 'rambling and confused' behavior at the February meeting" was cause for concern. Consequently, the executive committee ordered Dr. Brandner to undergo an evaluation at the Menninger Clinic.

Upon receiving this order Dr. Brandner contacted Kim Pakney, Providence's manager of medical staff services, to inform her that he had already been evaluated at Menninger. According to Pakney, Dr. Brandner indicated that he had done so of his own volition at the suggestion of his cardiac surgeon, without mentioning the order from the Medical Board. Dr. Brandner disputes this characterization of his conversation with Pakney; he testified that he told her that he went to Menninger "to pursue some things." After informing Pakney he had already been evaluated at Menninger, Dr. Brandner signed a release so the executive committee could obtain his

records. When she reviewed the records, Pakney realized the evaluation had been conducted pursuant to an order from the Medical Board.

At its June 2011 meeting, the executive committee voted to recommend termination of Dr. Brandner's hospital privileges because he had failed to report the Medical Board's order that he submit to an evaluation. The executive committee determined the Medical Board's order was a "final order" that imposed a condition on Dr. Brandner's license. Accordingly, Dr. Brandner had violated Providence Policy MS 980-150 when he failed to report the order to the chief of staff or the manager of the medical staff services department within 30 days.

The Providence Board affirmed the executive committee's recommendation. Dr. Brandner received a letter from Providence's chief executive officer in June 2011 notifying him that the executive committee "recommended the automatic termination of [hospital] privileges and staff membership" and that he had the right to a hearing. The letter also stated that the Providence Board "will not be bound by the adverse recommendation made thus far."

## B. Proceedings

Dr. Brandner timely requested a hearing to challenge the termination of his privileges. A hearing was held in November 2011 before a Fair Hearing Panel composed of Dr. Timothy Bateman, Dr. Ronald Christensen, and Dr. Terry Olivas. The hearing panel heard witness testimony from Dr. Floerchinger and Dr. Jeremy Gitomer, an executive committee member and the hospital's chief of staff. Each testified about the importance of physicians self-reporting conditions on their licenses due to the potential impact on patient care. The two doctors also testified that when the Medical Board or another hospital takes action against a practitioner, the Medical Board or hospital typically does not notify Providence; Providence must rely on self-disclosure.

Both doctors testified that Providence needs to know about license restrictions because it is responsible for the safety of its patients.

Dr. Brandner argued that the Medical Board's order was not a "condition" on his license within the meaning of Providence's reporting policy. He argued that the order was part of an "investigation" and the policy did not require doctors to report investigations. He submitted an affidavit from a Medical Board investigator attesting that because Dr. Brandner had complied with the order to undergo an evaluation at Menninger, the Medical Board had not imposed a condition on his license.[1]

The hearing panel decided the order did impose a condition upon Dr. Brandner's license because "[h]ad Dr. Brandner failed to timely complete such evaluations, the state Medical Board would have automatically suspended his license. Dr. Brandner's license was thus conditioned or encumbered by the Medical Board's [o]rder." And the Medical Board investigator's affidavit did not fully address this question because it was "silent on whether the [o]rder imposed a condition on Dr. Brandner's license *prior* to his timely completion of the evaluation." (Emphasis in original.) The hearing panel found Dr. Brandner's testimony concerning his interpretation of the policy less than credible because he did not accurately explain to Pakney his reasons for visiting Menninger. The hearing panel ultimately agreed with the Providence Board's decision to terminate Dr. Brandner's hospital privileges.

Dr. Brandner timely appealed the hearing panel's decision to Providence's Appellate Review Committee. The Appellate Review Committee upheld the hearing panel's decision by a 4-1 vote. Shortly thereafter the Providence Board notified Dr. Brandner's attorney that it had considered the recommendation of the Appellate Review

---

[1] The hearing panel does not have subpoena power and the Medical Board declined to send a representative to testify at the hearing, so the affidavit was the only evidence from the Medical Board.

Committee and voted again to affirm the executive committee's recommendation to terminate Dr. Brandner's privileges.

In June 2013 Dr. Brandner filed suit in superior court against Providence Health and Services-Washington, the corporation that owns Providence,[2] as well as Drs. Bateman, Christensen, Olivas, Floerchinger, and Gitomer. Dr. Brandner alleged breach of contract, due process violations, defamation, and other contract claims. He sought declaratory and injunctive relief restoring his hospital privileges as well as substantial money damages.

The doctors moved for summary judgment, asserting that they are immune under both state and federal law. First, the doctors argued they are immune under the federal Health Care Quality Improvement Act (HCQIA).[3] HCQIA provides immunity from damages (but not equitable relief) to professional review organizations and those who participate in review processes.[4] For immunity to apply, the professional review action must be taken

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to

---

[2]  Providence is not a party to this appeal, as will be explained below.

[3]  42 U.S.C. §§ 11101-11152 (2012).

[4]  *Id.* § 11111(a)(1).

obtain facts and after meeting the requirement of paragraph (3).[5]

Second, the doctors asserted they are immune under Alaska state law. They argued that Drs. Floerchinger and Gitomer are immune under AS 18.23.010, which grants immunity to witnesses providing information to a review organization so long as the witnesses did not knowingly make false statements. They also asserted that Drs. Bateman, Christensen, and Olivas, the doctors on the hearing panel, are immune under AS 18.23.020, which provides immunity for participants in review proceedings if their actions (1) were not motivated by malice; (2) occurred after reasonable efforts to ascertain the facts upon which their actions were based; and (3) were taken in the reasonable belief that their actions were warranted.[6]

---

[5] *Id.* § 11112(a).

[6] AS 18.23.020 provides:

> A person who is a member or employee of, or who acts in an advisory capacity to, or who furnishes counsel or services to a review organization is not liable for damages or other relief in an action brought by another whose activities have been or are being scrutinized or reviewed by a review organization . . . unless the performance of the duty, function, or activity was motivated by malice toward the affected person. A person is not liable for damages or other relief in an action by reason of performance of a duty, function, or activity as a member of a review organization or by reason of a recommendation or action of the review organization when the person acts in the reasonable belief that the action or recommendation is warranted by facts known to the person or to the review organization after reasonable efforts to ascertain the facts upon which the review organization's action or recommendation is made.

Dr. Brandner opposed the doctors' motion for summary judgment and cross-moved for partial summary judgment. He argued the doctors did not meet the requirements for immunity under HCQIA or state law. Dr. Brandner asserted that Drs. Floerchinger and Gitomer could not receive immunity under AS 18.23.010 because "Dr. Brandner's claims against them are based on their role as members of the [executive committee]." He argued that his privileges should be reinstated because his due process rights were violated when his hospital privileges were terminated without a hearing and because the application of the reporting policy was arbitrary and capricious.

In reply to Dr. Brandner's opposition to their motion for summary judgment, the doctors argued that in addition to being immune from claims based on their witness testimony under AS 18.23.010, Drs. Floerchinger and Gitomer are immune from claims arising from their executive committee membership under AS 18.23.020.

The superior court granted the doctors' motion for summary judgment in part and denied Dr. Brandner's cross-motion for partial summary judgment. The superior court determined that the five individual doctors are immune under AS 18.23.020[7] because they did not act with malice,[8] made reasonable efforts to ascertain the facts upon which their actions were based, and reasonably believed their actions were warranted. Because it concluded the doctors are immune under Alaska law, the superior court did not reach the question of whether the doctors are immune under HCQIA. The superior court entered a partial final judgment in favor of the doctors. The superior court

---

[7]     The superior court did not address whether AS 18.23.010 provides immunity against claims arising from Dr. Floerchinger's and Dr. Gitomer's witness testimony.

[8]     AS 18.23.020 does not define "malice" for purposes of that statute; the superior court defined malice as "inten[ding] to commit a wrong, recklessly disregarding another's legal rights, or bearing ill will."

also granted Providence summary judgment on Dr. Brandner's contract claims,[9] but not his due process claims.[10]

Dr. Brandner appeals from the superior court's order dismissing his claims against the individual doctors.

### III. STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo.[11] "Alaska Civil Rule 56 provides for judgment to be granted to a party where 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.' "[12] In this case, however, the superior court inquired whether a "reasonable finder of fact could conclude" that the doctors fail to meet AS 18.23.020's conditions. This is not the correct standard because "[s]ummary judgment does not require the non-moving party to prove factual issues according to the applicable evidentiary standard, and does not allow trial judges to predict how a reasonable jury would decide the case."[13] To defeat a motion for summary judgment, the non-moving party need only "show[] that a genuine

---

[9]     The superior court held that because Dr. Brandner failed to present facts sufficient to support his contract claims under the summary judgment standard, there was no need to discuss whether Providence was immune from Dr. Brandner's contract claims under HCQIA. However, it also stated that "even if Dr. Brandner had presented genuine issues of material fact with regard to his contract claims, [Providence] would remain immune to those claims under HCQIA."

[10]     HCQIA does not grant immunity against civil rights claims. 42 U.S.C. § 11111(a)(1). Brandner's due process claims against Providence were tried in February 2015.

[11]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[12]     *Id*. at 517 (quoting Alaska R. Civ. P. 56(c)).

[13]     *Id*. at 519.

issue of material fact exists to be litigated."[14]  Thus the relevant inquiry is whether there

is "a genuine issue of material fact" concerning the applicability of AS 18.23.020.[15]

## IV.    DISCUSSION

To affirm the superior court's order, we must be convinced that there is no

material dispute that:  (1) the doctors made reasonable efforts to ascertain the facts upon

which their recommendations were based; (2) they acted in the reasonable belief that

their recommendations were warranted by the facts; and (3) their actions were not

motivated by malice.[16]

### A.    The Executive Committee And Hearing Panel Made Reasonable Efforts To Ascertain The Facts Upon Which Their Recommendations Were Based.

Dr. Brandner challenges Dr. Floerchinger's and Dr. Gitomer's actions in

their capacity as executive committee members.[17]  Dr. Brandner argues that the executive

committee failed to undertake reasonable efforts to ascertain the facts relevant to the

termination of his privileges because it did not consider state law relating to medical

license conditions, Dr. Brandner's reading of the policy, and the ambiguity of the policy

language.  Dr. Brandner levies similar charges against the members of the hearing panel,

---

[14]    *Id*. (quoting *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014)) (internal quotation marks omitted).

[15]    *Id*.

[16]    *See* AS 18.23.020.  Dr. Brandner does not contest that the doctors were members of a review organization for purposes of AS 18.23.020.  We express no opinion on the federal immunity or due process questions.

[17]    Because we conclude they are immune, we need not decide whether Drs. Floerchinger and Gitomer could be individually liable for the group recommendation of the executive committee.  And although we need not decide this question, we observe that Drs. Floerchinger and Gitomer are immune under AS 18.23.010 for their testimony before the hearing panel.

arguing that their fact-finding efforts were not reasonable because the hearing panel "ignored [Dr. Brandner's] reasonable reading of the policy" and failed to give "any weight to the undisputed evidence of Dr. Brandner's professional competence."

We have never before interpreted AS 18.23.020 or its "reasonable efforts" requirement. The federal HCQIA includes the same "reasonable efforts" requirement, however, and interpretations of that provision are informative.[18] In broad terms, courts have explained that HCQIA does not require a hospital to "carry out its investigation in any particular manner; it is only required to conduct a factual investigation that is reasonable under the circumstances."[19] The Georgia Court of Appeals identified "the determinative inquiry" as "whether or not the totality of the process leading up to the board's decision evidenced a reasonable effort to obtain the facts of the matter."[20] Put

---

[18] *See* 42 U.S.C. § 11112(a)(2) (2012). Nevertheless, there is an important difference between the two statutes. HCQIA contains a presumption that its requirements were met, which may be rebutted by a preponderance of the evidence. *Id*. § 11112(a). In contrast, AS 18.23.020 contains no such presumption, and under Alaska law the plaintiff at summary judgment need only demonstrate a genuine issue of material fact as to compliance with the reasonable efforts requirement. *Christensen*, 335 P.3d at 516.

[19] *Cowell v. Good Samaritan Cmty. Health Care*, 225 P.3d 294, 305 (Wash. App. 2009); *see also Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 43 (1st Cir. 2002).

[20] *Davenport v. Ne. Ga. Med. Ctr., Inc.*, 542 S.E.2d 525, 530 (Ga. App. 2000). In *Davenport* the court found a review organization's factual investigation reasonable despite the physician's arguments that "many of the complaints were improperly ascertained, insufficiently verified by the proceedings, or were otherwise refuted." *Id*. Dr. Davenport, who had a history of disciplinary problems, gave a patient in labor ice chips in violation of hospital policy. *Id*. at 528-29. The hospital summarily suspended his epidural privileges, which were terminated permanently after a hearing. *Id*. The court found that in light of the Peer Review Committee's investigation, Dr. Davenport's

(continued...)

simply, a "[p]laintiff is entitled to a reasonable investigation under the Act, not a perfect investigation."[21]

For example, in *Sternberg v. Nanticoke Memorial Hospital, Inc.*, the Delaware Supreme Court held that a disciplinary review committee's efforts to ascertain facts were reasonable even though the committee did not determine whether a physician's specific act of insubordination presented a risk of harm to his patient.[22] Dr. Sternberg had invited a reporter into his operating room as part of a story about his political campaign; his privileges were suspended the same day.[23] The court held the committee's investigation "was reasonable because the only relevant facts were: (1) [Dr.] Sternberg was told that he could not engage in any political activity at the hospital; (2) he misleadingly described the visitor's purpose as educational; and (3) the reporter was there to write about [Dr.] Sternberg's political campaign."[24] Although the committee did not consider whether the reporter's presence posed a danger to patients, Dr. Sternberg had a history of insubordination and "it was reasonable to believe that [Dr.]

---

[20] (...continued)
several meetings with the committee, and the evidentiary hearing, Dr. Davenport "failed to demonstrate that the totality of the process leading up to the board's decision was not a reasonable effort." *Id*. at 530. Dr. Davenport had challenged the ultimate revocation of his privileges after a hearing, so the court did not address the question of whether the disciplinary organization made reasonable efforts to ascertain the facts before initially suspending him.

[21] *Singh*, 308 F.3d at 43 (alteration in original) (quoting *Egan v. Athol Mem'l Hosp.*, 971 F. Supp. 37, 43 (D. Mass. 1997)) (internal quotation marks omitted).

[22] 15 A.3d 1225, 1231-32 (Del. 2011).

[23] *Id*. at 1229.

[24] *Id.* at 1231 (internal quotation marks omitted).

Sternberg was uncontrollable and, therefore, presented a threat of harm to patients or staff."[25]

In Dr. Brandner's case, the executive committee and hearing panel conducted factual investigations that were reasonable under the circumstances. The executive committee based its decision on the Medical Board's order and the uncontradicted fact that Dr. Brandner had not reported the order to Providence. Although the executive committee did not conduct an evidentiary hearing, the factual basis for its decision is undisputed. Dr. Brandner argues that the executive committee's fact-finding efforts were unreasonable because the executive committee did not consider his interpretation of the policy. However, Dr. Brandner's arguments relating to the correct interpretation of the policy raise questions of law, not fact. Our inquiry into whether the review committee's fact-finding efforts were reasonable does not require us to make a legal determination concerning the correct interpretation of the reporting policy. Finally, Dr. Brandner's professional competence is not relevant; his professional competence does not excuse his violation of the reporting policy. Thus because the facts underlying the executive committee's decision are undisputed and Dr. Brandner points to no additional relevant facts, we conclude that Dr. Brandner has not demonstrated a

---

[25] *Id*. at 1232. For an example of an unreasonable investigation, see *Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324 (10th Cir. 1996). In *Brown*, Dr. Brown's economic competitor participated in the review process, the review panel examined only two patient charts before terminating her privileges, and she produced expert testimony that she complied with the procedures she allegedly violated. *Id*. at 1333-35. The court held that Dr. Brown had "presented sufficient evidence for a reasonable jury to find, by a preponderance of the evidence, the peer review action was not taken after a 'reasonable effort to obtain the facts of the matter.' " *Id*. at 1333. We note that Dr. Brown received a hearing before her privileges were terminated, in contrast to Dr. Brandner's automatic termination and post-termination hearing. *Id*. at 1328.

disputed fact that could show the executive committee members' investigation was unreasonable.

The hearing panel's fact-finding efforts were more comprehensive than the executive committee's, as the hearing panel conducted a full evidentiary hearing where Dr. Brandner had the opportunity to present witnesses and exhibits and cross-examine adverse witnesses. The hearing panel detailed its factual findings in a lengthy written report. Dr. Brandner does not identify any fact relating to the reporting policy that he believes the hearing panel should have considered and did not. He raises legal arguments concerning the hearing panel's decision, but his arguments do not implicate any contested factual issues. Accordingly Dr. Brandner has not demonstrated a material factual dispute concerning whether the hearing panel's fact-finding efforts were reasonable.

**B.    The Executive Committee And Hearing Panel Acted With The Reasonable Belief That Their Actions And Recommendations Were Warranted.**

Dr. Brandner argues that the executive committee and hearing panel did not reasonably believe their recommendations to terminate his privileges were warranted because there was no evidence Dr. Brandner was a risk to patients and it was not reasonable to terminate him for violating a "technical reporting requirement." But the executive committee relied on a reasonable reading of the policy, which states that the punishment for a violation is automatic termination of privileges. The hearing panel relied on the policy, as well as the testimony of four witnesses and a number of exhibits. It issued a written opinion detailing the evidence it considered and why it believed the evidence demonstrated that Dr. Brandner had violated the policy, requiring termination of his privileges.

The key point is that the executive committee and hearing panel relied on a reasonable reading of the policy and imposed the corresponding sanction. Dr. Brandner's views about the merits of the policy and his protestations that the sanction is unreasonably harsh are simply not relevant. Dr. Brandner has not demonstrated any disputed fact that could call into question whether the executive committee and hearing panel reasonably believed that Dr. Brandner violated the policy or that termination of his privileges was warranted.

## C. The Executive Committee And Hearing Panel Were Not Motivated By Malice Toward Dr. Brandner.

Dr. Brandner argues the executive committee and hearing panel acted maliciously because they recklessly disregarded evidence of his competence, "recklessly imposed the most drastic sanction within their power without regard to the ambiguity of [the policy] and the unfairness of penalizing a practitioner who relied on a reasonable reading of that policy," and failed to pay "due regard" to "Dr. Brandner's rights to practice his profession and earn a livelihood." Dr. Brandner also charges the executive committee with recklessly disregarding his rights by not "affording him his well-established right to notice and [a] hearing."

The immunity statute does not define "malice." The superior court put forth a definition it adopted from *Black's Law Dictionary*: "inten[ding] to commit a wrong, recklessly disregarding another's legal rights, or bearing ill will."[26] Dr. Brandner does not argue that the executive committee or hearing panel "inten[ded] to commit a wrong" or "[bore] ill will" toward him. And his arguments that the executive committee and hearing panel were reckless are unavailing.

---

[26] *Cf.* BLACK'S LAW DICTIONARY 1042 (9th ed. 2009) ("malice, *n.* (14c) 1. The intent, without justification or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights. 3. Ill will; wickedness of heart.").

The executive committee and hearing panel reasonably interpreted the policy, which did not require them to consider Dr. Brandner's professional competence or "rights to practice his profession and earn a livelihood." They enforced the sanction explicitly indicated in the policy. The merits of Dr. Brandner's underlying due process claims against the executive committee are not part of the immunity analysis. Dr. Brandner has not raised any material evidence tending to show that the executive committee and hearing panel were motivated by malice.

## V.    CONCLUSION

We AFFIRM the superior court's order dismissing Dr. Brandner's claims against the individual doctors.